**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 20, 2011

Lyle W. Cayce
Clerk

No. 09-40894 c/w 09-40900

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

GERONIMO HERNANDEZ-HERRERA,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 1:03-CR-00431 & 1:09-CR-678-1

Before SMITH, DeMOSS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Geronimo Hernandez-Herrera appeals from the sentence imposed as a consequence of his conviction under 8 U.S.C. § 1326(a) and (b)(1) for illegally reentering this country after he had been previously deported as an alien following a conviction for a felony offense. He also appeals the sentence imposed following the revocation of his supervised release related to a prior illegal reentry conviction. He argues that the sentences are procedurally unreasonable because the district court failed to explain its sentencing decision adequately and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40894 c/w 09-40900

that the sentences are substantively unreasonable because they are greater than necessary in light of the 18 U.S.C. § 3553(a) sentencing factors. We affirm.

## I

In 2003, Hernandez-Herrera pleaded guilty to the crime of illegal reentry by a previously deported alien following a conviction for an aggravated felony offense, in violation of 8 U.S.C. § 1326(a) and (b)(2). He was sentenced to a term of imprisonment of sixty-three months, to be followed by a three-year term of supervised release. He began his term of supervised release in 2007, at which time he was also deported to Mexico.

Eighteen months later, in 2009, Hernandez-Herrera was arrested in Brownsville, Texas. He subsequently was charged with the crime of illegal reentry of a previously deported alien following a conviction for a felony offense, in violation of 8 U.S.C. § 1326(a) and (b)(1). Additionally, the United States Probation Office, claiming that Hernandez-Herrera's 2009 illegal reentry violated the terms of his supervised release, filed a petition to revoke his supervised release.

Hernandez-Herrera pleaded guilty to the 2009 illegal reentry charge, and the district court ordered the United States Probation Office to prepare a presentence investigation report (PSR). The PSR assigned Hernandez-Herrera a base offense level of eight for the illegal reentry offense. He then received a sixteen-level enhancement, under § 2L1.2(b)(1)(A) of the U.S. Sentencing Guidelines Manual (Guidelines), for a prior felony drug trafficking offense and a three-level downward adjustment for acceptance of responsibility, leaving him with a total offense level of 21. After combining his offense level with his category V criminal history, Hernandez-Herrera's applicable Guidelines range for the 2009 illegal reentry offense was seventy to eighty-seven months of imprisonment. The PSR also included the Probation Office's determination that

2

it had "not identified any authorized factors concerning the offense or the offender that would warrant departure from the advisory guideline range."

Hernandez-Herrera did not object to the PSR, but he did file a motion for a variance or downward departure in which he raised three arguments. First, he noted that his teenage son was suffering from mental and behavioral problems and was not attending school, and that a state juvenile court had determined that his son was in need of rehabilitation after it found that the son had engaged in delinquent conduct. He claimed that he had reentered the United States in order to help his son. Second, he requested a departure under § 5K2.11 of the Guidelines, which provides that a reduced sentence may be appropriate when a defendant commits a crime in order to avoid a perceived greater harm. Finally, he argued that his Guidelines sentence was greater than necessary to satisfy the 18 U.S.C. § 3553(a) factors.

The district court subsequently held a revocation and sentencing hearing during which it considered both the Probation Office's petition to revoke Hernandez-Herrera's supervised release with respect to his 2003 illegal reentry conviction and his sentence for his 2009 illegal reentry conviction. The district court began the hearing by obtaining Hernandez-Herrera's plea with respect to the Probation Office's allegation that his conduct had violated the terms of his supervised release; he pleaded true to those allegations. The district court then proceeded to hear the parties' arguments as to Hernandez-Herrera's sentence for his new reentry conviction.

Hernandez-Herrera's counsel began by introducing the state juvenile court records for Hernandez-Herrera's son. Counsel submitted that Hernandez-Herrera's son was not attending school, was suicidal, and was beyond the control of the boy's mother. Counsel argued that Hernandez-Herrera "felt an overwhelming frustration that he had to do something for his son, so he crossed." Counsel also noted that Hernandez-Herrera stopped drinking in 2003, had not

been drinking since then, and had "been working pretty hard across doing what he could to help his family." Counsel also reiterated Hernandez-Herrera's request for a § 5K2.11 departure, arguing that he reentered the United States "in order to prevent a greater harm, which he believed was the absolute risk to his son." Hernandez-Herrera ultimately requested "that any sentence on the revocation be run concurrent" and "that the Court consider that a sentence with perhaps 12 months even on the reentry be sufficient." After hearing counsel's arguments, the district court engaged in the following exchange with counsel:

> THE COURT: Well, Mr. Wilde, tell me, what would be your client's proposal should I grant a variance and—I mean, there still has to be the issue of attention that this young man needs. Is he going to try to come back again? I mean, is that the only alternative that he and his spouse feel is going to make a difference for this boy, or is it going to be more of the same or what?

> MR. WILDE: I wish I had the answer to that, Your Honor. I think it's an impossible situation for the Court, for Mr. Hernandez, for his wife, and especially for his son and daughters. It's a tragic, to me a tragic and impossible situation. Maybe Mr. Hernandez could address that better than I could, Your Honor. I wouldn't want to be in Mr. Hernandez' shoes, I mean, his position, having to face this. I think it's a tragedy, Your Honor. I think Mr. Hernandez could probably address that better than I could, what he could expect to do for his son at this point.

For its part, the Government opposed any departure or variance from the Guidelines range. The Government argued that Hernandez-Herrera's situation did not differ significantly from the situations confronting many defendants who commit illegal reentries. The Government also suggested that his son's troubles might be attributable to Hernandez-Herrera's own conduct, insofar as he served as a poor role model for the boy. The Government ultimately requested a seventy-eight month sentence for Hernandez-Herrera's 2009 illegal reentry

No. 09-40894 c/w 09-40900

conviction and a consecutive eighteen-month sentence for his supervised release violation.

After hearing the Government's arguments, the district court made the following observation:

> THE COURT: All right. Well, the fact is, the bottom line, anybody who is under the supervision of the Court is to if ordered or required to refrain from associating with people who are committing crimes, you know, if his father were here his father would be committing a crime. I mean, it is definitely a lose/lose situation.

The court then asked Hernandez-Herrera if he had anything to say to the court, to which he responded:

> DEFENDANT HERNANDEZ: As far as my time goes just to reduce my time, which is the only thing. I don't really know how to speak. My intention was to call up and see them—my work is in Matamoros—just because of (indiscernible) problems. I had no intention of ever coming here to stay. My work is in Matamoros and I didn't have any intention to stay. Just to see them and deal with this problem they were having. That's all.

The district court ultimately imposed a seventy-month sentence for Hernandez-Herrera's 2009 conviction. The court provided the following explanation for that sentence:

> Sir, this sentence is in conformance with the Sentencing Reform Act of 1984. That is, the sentence in 09-CR-678. As the justification for the sentence the Court adopts the findings in the presentence report. The Court also relies on the evidence in Government's Exhibit #1 as the basis for the sentence.

The district court also imposed an eighteen-month revocation sentence for Hernandez-Herrera's violations of the terms of his supervised release, which it ordered would run eight months consecutively and ten months concurrently to his new seventy-month sentence. The court explained the revocation sentence as follows:

No. 09-40894 c/w 09-40900

> As for the [revocation sentence], the Court relies on the nature of the allegations of which it has found you in violation as the basis for the revocation in its order of a sanction of 18 months. The Court relies on the nature of the allegations as a basis for it, order[s] that it be served partially consecutively and partially concurrently.

Hernandez-Herrera then objected to the district court's sentencing decisions on the ground that the "sentence is more than is necessary . . . in that there has not been a sufficient explanation of the reasonableness of the sentence for this particular sentence."

Hernandez-Herrera separately appealed the revocation sentence and the original sentence for the 2009 illegal reentry. The Federal Public Defender filed a motion to withdraw in the appeal from the revocation sentence, citing *Anders v. California* and claiming that the appeal did not present a nonfrivolous legal question. This court denied the motion after our review of the record revealed nonfrivolous issues regarding the revocation sentence:

> (1) whether the court was required to give reasons for the revocation sentence and, if so, whether the reasons given were adequate, and (2) whether a revocation sentence is reviewed under the unreasonable or plainly unreasonable standard and whether the sentence satisfies the appropriate standard.

We then consolidated both appeals and ordered the Federal Public Defender to file a brief on the merits addressing the above issues. We have jurisdiction over these appeals pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

**II**

We begin by addressing Hernandez-Herrera's challenges to the seventy-month sentence imposed for his 2009 illegal reentry conviction. We review such

No. 09-40894 c/w 09-40900

a sentence for reasonableness using an abuse of discretion standard.[1]  In conducting this review, we first determine whether the district court erred procedurally "by, for example, miscalculating or failing to calculate the sentencing range under the Guidelines, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."[2]  "If the sentence is procedurally sound, we then consider the 'substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'"[3]  "[A] sentence within the Guidelines range is presumed reasonable on appeal."[4]  "In exercising this bifurcated review process, we continue to review the district court's application of the Guidelines *de novo* and its factual findings for clear error."[5]

## A

Hernandez-Herrera argues that his sentence is procedurally unreasonable because the district court committed "significant procedural error" by inadequately explaining its decision to sentence him to seventy months.  He claims that he presented the district court with nonfrivolous arguments in support of a lower sentence—"his rehabilitation and the extremely difficult personal and family situation that [he] was facing"—but that the district court "barely addressed these arguments at all."[6]  For its part, the Government argues

---

[1]  *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir.) (citing *Gall v. United States*, 552 U.S. 38 (2007)), *cert. denied*, 130 S. Ct. 192 (2009).

[2]  *Id.*

[3]  *United States v. Delgado-Martinez*, 564 F.3d 750, 751 (5th Cir. 2009) (quoting *Gall*, 552 U.S. at 51).

[4]  *Mondragon-Santiago*, 564 F.3d at 360.

[5]  *Delgado-Martinez*, 564 F.3d at 751.

[6]  Appellant's Br. at 26-27.

that Hernandez-Herrera's arguments were not "nonfrivolous" and that the district court provided an adequate explanation for its sentence.

A sentencing court "shall state in open court the reasons for its imposition of the particular sentence."[7] We have observed that "[w]hile sentences within the Guidelines require little explanation, more is required if the parties present legitimate reasons to depart from the Guidelines."[8] Nevertheless, the Supreme Court's decision in *Rita v. United States*[9] makes clear that even a brief explanation for a sentencing court's rejection of a defendant's arguments for a non-guidelines sentence can be sufficient. In *Rita*, the Court held that a sentencing court's explanation that a defendant's Guidelines range was not "inappropriate" and a sentence at the bottom of that range was "appropriate" was "brief but legally sufficient."[10] The Court also observed that the sufficiency of a sentencing court's explanation presents a case-specific inquiry: "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation."[11] The ultimate question is whether the sentencing judge has "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."[12]

Upon reviewing the record, we are satisfied that the district court in this case provided a sufficient explanation for its sentencing decision. The record

---

[7] 18 U.S.C. § 3553(c); s*ee also Mondragon-Santiago*, 564 F.3d at 362 (quoting 18 U.S.C. § 3553(c)).

[8] *Mondragon-Santiago*, 564 F.3d at 362 (internal quotation marks and citations omitted).

[9] 551 U.S. 338 (2007).

[10] *Id.* at 358.

[11] *Id.* at 357.

[12] *Id.* at 356.

reflects that the district court had before it at the sentencing hearing both the PSR and Hernandez-Herrera's motion for a variance or departure in which he raised his arguments for a sentence below his Guidelines range.  He reiterated these arguments during the sentencing hearing, and the record shows that the district court listened to each argument, posed questions to counsel, and stated its belief that Hernandez-Herrera's presence in the United States could not help his son because the two would be unable to associate due to Hernandez-Herrera's criminal conduct.  Moreover, the district court explicitly relied on the PSR, which contained a statement by the Probation Office that it had "not identified any authorized factors concerning the offense or the offender that would warrant departure from the advisory guideline range," as a justification for its sentence.  When it adopted the findings of the PSR, the district court expressly adopted this conclusion as its own.  Given the circumstances, we hold that the district court did not procedurally err with respect to the adequacy of its sentencing explanation.

**B**

We now consider the substantive reasonableness of the sentence.  The district court sentenced Hernandez-Herrera to seventy months' imprisonment for his 2009 illegal reentry conviction, a sentence that was within the Guidelines range of seventy to eighty-seven months.  "A presumption of reasonableness applies to sentences that fall within the guidelines."[13]  "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."[14]  On appeal, Hernandez-Herrera argues that he is entitled

---

[13] *United States v. Ruiz*, 621 F.3d 390, 394 (5th Cir. 2010).

[14] *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1930 (2010).

to a rebuttal of the presumption of reasonableness that attached to his sentence because the district court made a clear error in judgment by failing to take into account that he quit drinking alcohol in 2003 and had been working and providing for his family.    He also claims that his compelling family circumstances made him less culpable, and more deserving of leniency, than the typical violator of 8 U.S.C. § 1326.

We disagree.   Hernandez-Herrera here appears simply to disagree with the district court's ultimate sentencing decision.   Such disagreement does not rebut the presumption of reasonableness that attached to his sentence, however. As we have previously noted, "the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant."[15]   "A defendant's disagreement with the propriety of the sentence imposed does not suffice to rebut the presumption of reasonableness that attaches to a within-guidelines sentence."[16]   Moreover, even if we would have sentenced Hernandez-Herrera differently in the first instance, "[t]he fact that an appellate court may have reasonably concluded that a different sentence was appropriate is not sufficient to justify reversal of the district court."[17]   The district court considered Hernandez-Herrera's circumstances and arguments, balanced them in light of the factors set forth in 18 U.S.C. § 3553(a), and selected a sentence at the lowest end of the Guidelines range.   The sentence is not substantively unreasonable.

## III

We next address Hernandez-Herrera's challenges to his eighteen-month revocation sentence for violations of the terms of his supervised release.   We

---

[15] *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008).

[16] *Ruiz*, 621 F.3d at 398.

[17] *United States v. York*, 600 F.3d 347, 361-62 (5th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

review sentences imposed on the revocation or modification of a supervised release term under a "plainly unreasonable" standard.[18]   Under this standard, we first assess the reasonableness of the challenged sentence by addressing its procedural and substantive reasonableness as we would an original sentence.[19] If we determine that the sentence is unreasonable, we then "consider whether the error was obvious under existing law."[20]

## A

We first address whether the district court procedurally erred by inadequately explaining its decision to impose the eighteen-month revocation sentence.   As with original sentences, district courts must explain their sentencing decisions in the revocation context.  In *United States v. Whitelaw*,[21] we observed that the Supreme Court's decision in *Rita* "sets forth the requirements for the statement of reasons required to support a sentence under various circumstances" and proceeded to apply that decision in a case involving a revocation sentence.[22]  Accordingly, we determine the adequacy of the district court's explanation of Hernandez-Herrera's revocation sentence through reference to *Rita* and our case law applying that decision.  We do so, however,

---

[18]  *See United States v. Miller*, 634 F.3d 841, 843 (5th Cir. 2011).

[19]  *Id.* ("Under the plainly unreasonable standard, we evaluate whether the district court procedurally erred before we consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." (internal quotation marks and citation omitted)); *see also United States v. Crudup*, 461 F.3d 433, 438-39 (4th Cir. 2006) ("In determining whether a sentence is plainly unreasonable, we first decide whether the sentence is unreasonable.   In conducting this review, we follow generally the procedural and substantive considerations that we employ in our review of original sentences . . . with some necessary modifications to take into account the unique nature of supervised release revocation sentences.").

[20]  *Miller*, 634 F.3d at 843.

[21]  580 F.3d 256 (5th Cir. 2009).

[22]  *Id.* at 261.

No. 09-40894 c/w 09-40900

with the understanding that our review of revocation sentences is generally more deferential than our review of original sentences.[23]

Here, the district court explained that it was relying "on the nature of the allegations" that constituted Hernandez-Herrera's supervised release violation as the basis for his revocation sentence. The "nature and circumstances of the offense and the history and characteristics of the defendant" is one of the § 3553(a) factors that a district court must consider when imposing a revocation sentence,[24] and the district court's explanation implicitly identifies this factor as supporting its sentencing decision. The district court's explanation of Hernandez-Herrera's revocation sentence thus was adequate.[25] The revocation sentence is procedurally reasonable.

**B**

Finally, we address the substantive reasonableness of Hernandez-Herrera's revocation sentence. As with his original sentence, Hernandez-Herrera argues that his revocation sentence is substantively unreasonable because it is greater than necessary in light of the 18 U.S.C. § 3553(a) sentencing factors. We disagree.

The district court revoked Hernandez-Herrera's supervised release after he admitted that he committed conduct that violated 8 U.S.C. § 1326(a) and

---

[23] *Miller*, 634 F.3d at 843.

[24] *See* 18 U.S.C. § 3583(e) ("The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision . . . .").

[25] *See United States v. Rodriguez*, 523 F.3d 519, 525 (5th Cir. 2008) (upholding a district court's sentencing decision in which the district court "adopted the findings, reasoning, and Guidelines calculations of the PSR" and "rejected [the Defendant's] request for a below-guidelines sentence and imposed a maximum guidelines sentence, expressly stating its belief that the sentence would 'adequately address the objectives of punishment and deterrence'").

(b)(1).  A violation of 8 U.S.C. § 1326(a) and (b)(1) carries a statutory maximum sentence of ten years of imprisonment and is a Class C felony.[26]  Accordingly, Hernandez-Herrera's conduct constituted a Grade B supervised release violation under the Guidelines.[27]  Once combined with his criminal history category of V, the violation yielded a Guidelines range of eighteen to twenty-four months of imprisonment.[28]  Because the term of supervised release had been imposed pursuant to Hernandez-Herrera's conviction for violation of 8 U.S.C. § 1326(a) and (b)(2), a class C felony, the statutory maximum term of imprisonment on revocation of his supervised release was twenty-four months.[29]  Additionally, the Guidelines recommend that any sentence imposed on revocation of supervised release be served consecutively to other sentences being served by the defendant.[30]

Hernandez-Herrera's revocation sentence of eighteen months thus rested within his Guidelines range and below the maximum sentence allowed by statute.  We routinely uphold supervised release revocation sentences *in excess* of the Guidelines range but within the statutory maximum.[31]  Moreover, the district court's decision to allow Hernandez-Herrera to serve ten months of his revocation sentence concurrently with his other sentence was to his benefit and supports the substantive reasonableness of the sentence.  The revocation sentence is substantively reasonable.

---

[26]  8 U.S.C. § 1326(b)(1); 18 U.S.C. § 3559(a)(3).

[27]  U.S. SENTENCING GUIDELINES MANUAL § 7B1.1(a)(2) (2008).

[28]  *Id.* § 7B1.4.

[29]  18 U.S.C. §§ 3559(a)(3), 3583(e)(3).

[30]  U.S. SENTENCING GUIDELINES MANUAL § 7B1.3(f) & cmt. n.4 (2008).

[31]  *See United States v. Whitelaw*, 580 F.3d 256, 265 (5th Cir. 2009) (citing *United States v. Jones*, 182 F. App'x 343, 344 (5th Cir. 2006)).

No. 09-40894 c/w 09-40900

\*       \*       \*

AFFIRMED.