# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 10, 2013

Lyle W. Cayce
Clerk

No. 11-50143

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SONG U. CHON, also known as The Korean; ALEJANDRO GARCIA–RICO; MANUEL CARDOZA; YCL CORPORATION, doing business as The Gateway Hotel,

Defendants - Appellants.

Appeals from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PER CURIAM:

A jury convicted Defendants-Appellants Song U. Chon ("Chon"), Alejandro Garcia–Rico ("Garcia–Rico"), Manuel Cardoza ("Cardoza"), and YCL Corporation ("YCL") of conspiring to smuggle, transport, and harbor illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  A jury also convicted Chon of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i), and three counts of willfully aiding and assisting in the filing of a false tax return in violation of 26 U.S.C. § 7206(2).  Chon, Cardoza, and YCL each challenge their convictions and Chon and Garcia–Rico challenge their sentences. For the reasons that follow, we find no reversible error and, therefore, AFFIRM.

No. 11-50143

I.

The facts of this case[1] involve the use of the Gateway Hotel, which is located in close proximity to the United States-Mexico border in El Paso, Texas, as a location to harbor illegal aliens beginning in 2003 and continuing through May 2009. YCL owned the Gateway Hotel until Chon, one of the four directors of YCL, purchased it in February 2004.[2] Chon, as owner of the Gateway Hotel, worked on a daily basis in an office near the front desk. During the years in question, the Gateway Hotel employed Armondo Arzate ("Arzate") as its general manager, Garcia–Rico as a front-desk clerk, and Jose Herrera ("Herrera") as a maintenance man. The Gateway Hotel also rented its restaurant area to Juo-Hsuan Hsu ("May") who ran May's Café.

Overwhelming, undisputed evidence was offered at trial that individuals conducting alien-smuggling operations ("alien smugglers"), including Cardoza, utilized the Gateway Hotel as a location to harbor illegal aliens who had just crossed the border before they were transported to other locations in the United States. The prosecution offered evidence that Chon, Garcia–Rico, Arzate, Herrera, and May cooperated with the alien smugglers to facilitate their use of the Gateway Hotel to harbor illegal aliens. For example, Herrera made arrangements to allow illegal aliens to sneak into rooms at the Gateway Hotel without law enforcement noticing and to wash the dirty clothing of the illegal aliens once they made it into their rooms. At the phone requests of the alien smugglers, Gateway Hotel employees would regularly agree to deliver food from May's Café directly to illegal aliens who were hiding inside hotel rooms. The

---

[1] We view the facts in the light most favorable to the jury verdict as we must. *E.g.*, *United States v. Cantu–Ramirez*, 669 F.3d 619, 622 n.1 (5th Cir. 2012).

[2] Even after Chon purchased the Gateway Hotel in February 2004, all filings relating to the business occurring at the Gateway Hotel, such as federal tax returns and hotel occupancy records, continued to be made in the name of "YCL, Inc., doing business as the Gateway Hotel."

front-desk clerks also facilitated the alien smuggler's use of the Gateway Hotel by allowing alien smugglers to pay for rooms used by illegal aliens. Immigration and Customs Enforcement ("ICE") agents testified that during several raids, Garcia–Rico, who was working at the front desk, called the rooms where illegal aliens were located, presumably to warn the illegal aliens of the raid. Law enforcement recorded numerous telephone calls between Gateway Hotel employees and the alien smugglers, including a telephone call between Garcia–Rico and an alien smuggler during which Garcia–Rico agreed to pay $850 to transport an illegal alien who was staying at the Gateway Hotel out of El Paso. Moreover, evidence established that Garcia–Rico, Arzate, and Herrera all received tips from the alien smugglers for their cooperation in harboring illegal aliens in the Gateway Hotel.

ICE conducted raids of the Gateway Hotel throughout the duration of the alleged conspiracy, resulting in the discovery of hundreds of illegal aliens. Chon, who admitted that he knew illegal aliens were being housed at the Gateway Hotel, was often present when ICE conducted raids of the Gateway Hotel.[3] After more than 100 illegal aliens were removed from the Gateway Hotel in a single raid in 2006, Arzate suggested to Chon that they change the path of the business away from renting to illegal aliens. Chon rejected this suggestion by responding that they had "no authority to request papers." Chon and Arzate occasionally discussed the credit situation of the alien smugglers who were longstanding clients of the Gateway Hotel. Herrera, in a recorded conversation with an alien smuggler, explained that Chon "was making a big deal about" money an alien smuggler owed for rooms illegal aliens used at the Gateway Hotel.

Chon was responsible for maintaining the books for the Gateway Hotel

---

[3] Moreover, in 2007, the Department of Homeland Security sent Chon a letter notifying him of the illegal activities occurring in his hotel and instructing him to "revoke the permission for use of your property to those engaging in unlawful activities."

throughout the duration of the conspiracy. Chon created two sets of books: one that accurately portrayed the gross receipts, and another that substantially understated gross receipts. To facilitate this underreporting of gross receipts, Chon directed Arzate to set aside $300 to $400 each day from the Gateway Hotel's gross receipts. Chon also signed and prepared YCL's 2005, 2006, and 2007 corporate tax returns. In each year, the gross receipts from the Gateway Hotel were substantially understated.

In 2009, Chon, Garcia–Rico, Cardoza, YCL, Arzate, Herrera, and May, among others, were charged with conspiring to smuggle, transport, and harbor illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) ("Count I"). Chon was also charged with money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i) ("Count II"), and three counts of willfully aiding and assisting in the filing of a false tax return in violation of 26 U.S.C. § 7206(2) ("Counts III, IV, and V"). Arzate, Herrera, and May each pled guilty prior to trial. A jury found Chon, Garcia–Rico, Cardoza, and YCL guilty on all charges. The district court sentenced Chon to 120 months of imprisonment on Count I, 180 months on Count II, which was an upward departure from the Guidelines range of 108 to 135 months, and 36 months on Counts III, IV, and V, all to be served concurrently, and ordered Chon to pay restitution of $481,812.32. The district court sentenced Garcia–Rico to fifty-one months' imprisonment on Count I. Chon, Garcia–Rico, Cardoza, and YCL each timely filed a notice of appeal.

## II.

Chon, Cardoza, and YCL each contend that there was insufficient evidence to sustain their convictions.[4]    Each defendant properly preserved their

---

[4] In addition to Chon's challenges to the sufficiency of the evidence on each of his convictions, Chon also challenges several instructions that the district court gave the jury. Having considered the record and the parties' arguments regarding the challenged jury instructions, we conclude that Chon has failed to demonstrate that the district court committed reversible error. Chon also argues that the district court abused its discretion by refusing to provide a jury instruction relating to the charges for willfully preparing a tax

insufficiency-of-the-evidence claim; therefore, we review each sufficiency challenge *de novo*. *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012) (citation omitted). Our review of the sufficiency of the evidence is "highly deferential to the verdict." *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002). "[V]iewing the evidence in the light most favorable to the prosecution," we consider whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). We "accept[] all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict," *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997) (citation omitted), and resolve "any conflicts in the evidence . . . in favor of the verdict." *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990) (citing *United States v. Clark*, 741 F.2d 699, 703 (5th Cir. 1984)).

## A.

We first consider Chon, Cardoza, and YCL's sufficiency challenges to their conspiracy convictions. To obtain a conviction under § 1324(a)(1)(A)(v)(I), the government must establish that the defendant:

> [A]greed with one or more persons to transport or move illegal aliens within the United States in furtherance of their unlawful presence, or to conceal, harbor, or shield from detection such aliens, knowingly or in reckless disregard of the fact that such aliens had come to, entered, or remained in the United States in violation of law.

*United States v. Ahmed Khan*, 258 F. App'x 714, 717 (5th Cir. 2007) (unpublished but persuasive).

In order to prove a conspiracy, the government must prove beyond a reasonable doubt that an agreement existed to violate the law and each

---

return that is fraudulent as to any material matter. Because Chon's proffered instruction was not relevant to such a charge and, therefore, did not concern an important point in the trial, the district court did not abuse its discretion in denying the proffered instruction. *See, e.g.*, *United States v. Jobe*, 101 F.3d 1046, 1059 (5th Cir. 1996).

conspirator knew of, intended to join, and voluntarily participated in the conspiracy. *United States v. Davis*, 226 F.3d 346, 354 (5th Cir. 2000). The agreement to violate the law does not have to be "explicit or formal;" a tacit agreement is sufficient. *United States v. Freeman*, 434 F.3d 369, 376 & n.5 (5th Cir. 2005). The existence of an agreement to violate the law may be established solely by circumstantial evidence and may be inferred from "concert of action." *See, e.g.*, *United States v. Bieganowski*, 313 F.3d 264, 277 (5th Cir. 2002). Voluntary participation in the conspiracy "may be inferred from a collocation of circumstances," and knowledge of the conspiracy "may be inferred from surrounding circumstances." *Id.* (citation and internal quotation marks omitted). While a conspirator must knowingly participate in some way in the larger objectives of the conspiracy, he does not need to know all details of the unlawful enterprise or have a major role in the unlawful enterprise. *Davis*, 226 F.3d at 354. We consider in turn each defendant's sufficiency challenge to their conspiracy conviction.

1.

Chon primarily argues that the evidence is insufficient to prove that he engaged in any conduct that manifested an intent to conceal, harbor, or shield aliens from detection or that he agreed with one or more co-conspirators to violate § 1324(a)(1)(A)(v)(I). We disagree.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could infer that Chon agreed with Arzate, among others, to encourage alien smugglers to rent rooms for illegal aliens by providing a location where illegal aliens could obtain food, shelter, and laundry services without the need to leave their rooms at the Gateway Hotel. Chon's contention that he simply did not prevent illegal aliens from renting a room at the Gateway Hotel is belied by his facilitation of their presence and his willingness to allow alien smugglers to rent rooms on behalf of groups of illegal aliens. Although there

was no direct evidence of an express agreement between Chon and the alien smugglers, the concerted action among Chon, his employees, and the alien smugglers supports an inference of such agreement. Moreover, Chon's participation in the conspiracy was supported by direct evidence, including testimony regarding his willingness to offer credit to alien smugglers and his subsequent complaints about alien smugglers who owed him money. There is also strong circumstantial evidence that Chon was aware of the scope and objectives of the conspiracy, such as his admitted presence at the Gateway Hotel when over 100 illegal aliens were removed in a single raid and his daily "skim" of $300 to $400 in cash receipts.

2.

Cardoza, although he concedes that he agreed with a co-conspirator to transport at least two illegal aliens, argues that there was insufficient evidence to prove that his actions were in furtherance of the two aliens' illegal presence. This argument is without merit. Cardoza, in a recorded phone conversation with another member of the conspiracy, explicitly agreed to move illegal aliens from his home to a drop-off location and pay $900 to transport the illegal aliens from El Paso to other cities in the United States. This recorded phone conversation is direct evidence of Cardoza's voluntary and knowing agreement with another member of the conspiracy to participate in transporting illegal aliens in violation of § 1324(a)(1)(A)(v)(I). Moreover, federal agents witnessed Cardoza carry out this agreement by transporting and delivering two illegal aliens to the agreed upon location. Finally, Cardoza's contention that there is no evidence that he agreed with any other co-conspirator is irrelevant in light of the direct evidence of his agreement with one co-conspirator. Cardoza's conviction does not depend on evidence that he agreed to conspire directly with Chon or a showing that he played a large part in the conspiracy. *See Davis*, 226 F.3d at 354.

3.

YCL's only argument on appeal is that there was insufficient evidence that YCL's agents' or employees' actions in furtherance of the conspiracy were committed within their scope of employment. The record does not support YCL's argument. We have held that "a corporation is criminally liable for the unlawful acts of its agents, provided that the conduct is within the scope of the agent's authority, whether actual or apparent." *United States v. Inv. Enters., Inc.*, 10 F.3d 263, 266 (5th Cir. 1993) (citing *United States v. Bi–Co Pavers, Inc.*, 741 F.2d 730, 737 (5th Cir. 1984)). Here, overwhelming evidence showed that YCL operated the Gateway Hotel during the years in question, including tax returns filed under the name "YCL, Inc., doing business as the Gateway Hotel." Moreover, evidence established that Chon was the President and, accordingly, an agent of YCL. Chon's actions that form the basis for his conspiracy conviction, as discussed above, also serve as the basis for YCL's conviction because Chon's actions were within the scope of his authority as President of YCL.[5]

B.

We next consider the sufficiency of the evidence in support of Chon's conviction for money laundering, in violation of § 1956(a)(1)(A)(i) and (B)(i). To establish this offense, the government must prove that the defendant: "(1) conducted or attempted to conduct a financial transaction, (2) that the defendant knew involved the proceeds of unlawful activity, and (3) that the defendant knew was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity." *Bieganowski*, 313 F.3d at 279

---

[5] YCL does not advance any argument that Chon's actions should not be attributed to YCL; rather, it takes the position that Chon was "uninformed about [the hotel employees'] activities." Given the overwhelming evidence supporting a finding that Chon was aware of and encouraged his employee's activities in the conspiracy, this argument is without merit.

(citations omitted). "The substantive offense of money laundering requires that the defendant knew that the funds in question represented the proceeds of unlawful activity." *Id.* at 278 (citing *United States v. Burns*, 162 F.3d 840, 847 (5th Cir. 1998)). Chon's argument that the evidence was insufficient to prove that he committed the offense of money laundering rests on his contention that the evidence was insufficient to prove that he was aware of the "unlawful activity," namely the conspiracy to smuggle, transport, and harbor aliens. Because the evidence supports a finding that Chon knowingly participated in the conspiracy, Chon's challenge to the sufficiency of the evidence to support his money-laundering conviction also fails.

## C.

Finally, Chon contends that the evidence is insufficient to prove that he willfully aided and assisted in the filing of a false tax return. He asserts that YCL was not the owner of the Gateway Hotel and, therefore, YCL had no obligation to report any gross receipts from Gateway Hotel. Chon's argument fails because § 7206(2) does not require that the defendant overstate or understate income, or have any filing requirement, for that matter. Rather, a conviction is proper under § 7206(2) if a defendant willfully aids or assists in the preparation of a return which is fraudulent or is false as to *any material matter*. 26 U.S.C. § 7206(2). Even under Chon's theory of the case that YCL did not own the Gateway Hotel and therefore had no income to report, Chon willfully aided and assisting in the filing of a tax return that fraudulently reported that YCL was the proper entity to report the Gateway Hotel income. Accordingly, the evidence is sufficient to support the guilty verdict on each count of willfully aiding and assisting in the filling of a false tax return.

## III.

Chon and Garcia–Rico also challenge the reasonableness of their sentences. We review sentences for reasonableness under an abuse-of-

discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007). In conducting this review, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 51. If the district court's sentencing decision is procedurally sound, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard."[6] *Id.*

### A.

Chon and Garcia–Rico both argue that it was procedural error for the district court to impose certain enhancements to their offense levels. We review *de novo* a district court's application and interpretation of the Guidelines. *United States v. Solis–Garcia*, 420 F.3d 511, 514 (5th Cir. 2005). The factual findings that a district court makes in support of its decision to apply an enhancement are reviewed for clear error. *United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Juarez–Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (citation omitted). Because Chon and Garcia–Rico both objected to the enhancements challenged on appeal, we review their challenges to the Guidelines enhancements for harmless error. *United States v. Olano*, 507 U.S. 725, 734 (1993). An error is harmless if it "does not affect substantial rights." Fed. R. Crim. P. 52(a). The government bears the burden of showing that an error was harmless beyond a reasonable doubt. *Olano*, 507

---

[6] Garcia–Rico did not argue that his fifty-one-month sentence was substantively unreasonable. Chon also did not clearly argue that his 180-month sentence on the money-laundering conviction was substantively unreasonable; however, several statements in his briefing indicate that the district court "did not properly consider" the 18 U.S.C. § 3553(a) factors. We have considered the entirety of the record and Chon's limited argument on this issue and find no basis for overturning the district court's discretion in selecting Chon's sentence.

U.S. at 734.

### 1.

Garcia–Rico's only claim on appeal is that it was error for the district court to impose a three-level enhancement to his offense level pursuant to U.S.S.G. § 3B1.1(b) for his alleged role as a manager or supervisor of the conspiracy to smuggle, transport, and harbor illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). Section 3B1.1(b) authorizes a three-level enhancement to the defendant's offense level if the "defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). The commentary to § 3B1.1(b) states that to qualify for an adjustment based on a role as a manager or supervisor:

> [T]he defendant must have been the . . . manager[] or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1 cmt. n.2. Garcia–Rico contends the district court's finding that he was a manager or supervisor was clearly erroneous because he did not manage or supervise any other participants or exercise management responsibilities over the property, assets, or activities of a criminal organization. This argument fails in light of the unrebutted facts contained in Garcia–Rico's pre-sentence report ("PSR"), which the district court adopted, that plausibly support the conclusion that Garcia–Rico was a manager or supervisor of the criminal activity in this case. *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (explaining that a district court "may adopt the facts contained in a [PSR] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is

unreliable." (alteration in original) (quoting *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007))). The PSR contained information that Garcia–Rico received wired monetary payments from alien smugglers that were then used to smuggle, transport, and harbor illegal aliens. This fact, which Garcia–Rico failed to rebut or otherwise demonstrate was unreliable, directly supports a finding that Garcia–Rico exercised management responsibility over the property of the illegal harboring conspiracy. Accordingly, the district court did not err, much less clearly err, by adopting the findings and recommendations in the PSR to apply the three-level manager or supervisor enhancement.

2.

Chon raises numerous issues related to the calculation of his Guidelines range. Most of the issues—specifically, the alleged errors in calculating the adjusted offense level for Count I and Counts III, IV, and V—are harmless because they did not affect Chon's sentencing range which, pursuant to U.S.S.G. § 3D1.3(a), was driven by Chon's Count II money-laundering conviction because it carried the greatest adjusted offense level. *See United States v. Ramos*, 71 F.3d 1150, 1158 n.27 (5th Cir. 1995). Only two challenges relate to enhancements that the district court imposed relating to the money-laundering conviction.[7]

Chon first argues that the district court erred by imposing a two-level enhancement pursuant to U.S.S.G. § 2S1.1(b)(3) based on its finding that Chon utilized sophisticated means in committing the money-laundering offense. While Chon concedes that he maintained two sets of financial records and

---

[7] Chon also argues that the district court erred by adopting the PSR's finding that the "grand total of laundered monetary instruments derived from the proceeds of the smuggling and harboring undocumented aliens is $1,394,268.49." The calculation of the value of the laundered funds is only relevant to the calculation of the Guidelines range if the base offense level is selected pursuant to § 2S1.1(a)(2)—which did not occur here. Accordingly, we conclude that any error in calculating the total value of laundered funds was harmless because the enhancement did not affect Chon's Guidelines range.

"skimmed" income on a daily basis, he argues that these actions do not constitute "sophisticated means" as defined in the sentencing commentary. We disagree. Maintaining two sets of books, skimming income on a daily basis, and disguising alien-smuggling proceeds as "parking income" in an attempt to make the criminally derived funds appear legitimate are sufficiently complex to support the enhancement here. *See United States v. Stewart*, 213 F. App'x 291, 293 (5th Cir. 2007) (unpublished but persuasive) (concluding that a sophisticated means enhancement was proper because the means utilized—instructing a bookkeeper to generate separate books to support misstatements—were more complex than simply making misstatements without supporting books).

Second, Chon argues that the district court clearly erred by imposing a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) based on its finding that Chon was a leader or organizer of the money-laundering offense. Specifically, Chon argues that "[t]he absence of evidence that Chon led anyone or organized any alien smuggling activity . . . precludes a finding that he was a 'leader/organizer' of the money laundering offense of which he was convicted." The record, which includes evidence that Chon exercised decision-making authority, claimed a larger share of the fruits of the crime, and had a high degree of control and authority over others, belies Chon's assertion. *See* U.S.S.G. § 3B1.1 cmt. n.4 (providing examples of factors that distinguish "a leadership and organizational role from one of mere management or supervision"). The district court's finding that Chon was a leader or organizer of the criminal activity is plausible in light of the record as a whole.

B.

Chon also contends that the district court committed procedural error by failing to adequately explain its selection of an 180-month sentence on the money-laundering offense, which constituted an upward departure of forty-five months. Chon did not object before the district court as to the procedural or

substantive reasonableness of his sentence. Because Chon failed to raise an objection below, review is for plain error. *See United States v. Mondragon–Santiago*, 564 F.3d 357, 361 (5th Cir. 2009). To succeed on plain-error review, Chon must show a clear or obvious forfeited error that affected his substantial rights. *Id.* We have discretion to correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

Section 3553(c) requires that: (1) a district court at sentencing, in open court, state the reasons for its imposition of the particular sentence; and (2) if the sentence is outside the Guidelines range, a district court must state the specific reason for the departure and must state those reasons "with specificity in a statement of reasons form." 18 U.S.C. § 3553(c); *see also Mondragon–Santiago*, 564 F.3d at 362 ("While sentences within the Guidelines require little explanation, more is required if the parties present legitimate reasons to depart from the Guidelines." (quotation and internal citation omitted)). At Chon's sentencing hearing, the district court made only a single passing reference to § 3553(a) and did not provide any explanation for the sentence it selected or for its decision to depart from the advisory guideline range on Count II. The district court did, however, indicate on the statement of reasons that it was departing "from the advisory guideline range for reasons authorized by the sentencing guidelines manual," and then selected the box indicating that the sentence above the advisory guideline range was based upon the "government motion for upward departure."

Considering the district court's single passing reference to the § 3553(a) factors and lack of any explanation for the upward departure, besides the indication on the statement of reasons that it was based on the government's motion for an upward departure, the district court committed procedural error. *See id.* at 363–64 (finding procedural error where the district court failed to

14

adequately explain its reasons for a within-Guidelines sentence); *United States v. Tisdale*, 264 F. App'x 403, 411–12 (5th Cir. 2008) (finding procedural error where the district court "gave no indication it had considered [the parties'] § 3553(a) arguments or any of the § 3553(a) factors" in selecting a within-Guidelines sentence). The second element of the plain-error test is also met in this case because "the law requiring courts to explain sentences is clear." *Mondragon–Santiago*, 564 F.3d at 364 (citing *United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005)).

We conclude, however, that Chon has failed to demonstrate that the error affected his substantial rights. In *United States v. Gore*, we concluded that a district court's failure to explain its reasons for an upward departure in open court did not affect the defendants' substantial rights because the statement of reasons referred to the PSR, which provided reasons for the departure. 298 F.3d 322, 324–26 (5th Cir. 2002). We reasoned that because the ultimate goal of § 3553(c) is to permit effective appellate review of sentencing, the district court's reference to the PSR was sufficient to allow effective review of the basis for departure. *Id.* at 325–26; *see also United States v. Fajardo*, 469 F. App'x 393, 395 (5th Cir. 2012) (unpublished but persuasive) (same); *United States v. Silva–Torres*, 293 F. App'x 316, 319–20 (5th Cir. 2008) (unpublished but persuasive) (same). Here, the district court, in the written statement of reasons, indicated that the upward departure was based upon the "government motion for upward departure." The government's motion for upward departure extensively discussed the rationale for recommending that the district court sentence Chon to the statutory maximum for each count of conviction. Because the district court's reference to the government's motion allows for review of the basis for the upward departure in this case, Chon is unable to demonstrate that the court's failure to explain its reasons for departing at sentencing affected his substantial rights. *See Gore*, 298 F.3d at 325–26.

No. 11-50143

IV.

For the foregoing reasons, the Defendants-Appellants' convictions and sentences are AFFIRMED.