## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2015

No. 13-40826

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

JESUS LOPEZ-CABRERA,

     Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:12-CR-1003

Before JOLLY, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Jesus Lopez-Cabrera ("Cabrera") appeals his conviction and sentence for transporting and conspiring to transport an illegal alien within the United States for the purpose of private financial gain. Because the evidence supports the jury's verdict and the district court did not err in imposing its sentence, we affirm.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40826

## I. BACKGROUND[1]

Cabrera owned and operated an orange and white tractor-trailer. During the relevant time period, Cabrera worked for a small transportation company, Tiger Express Services, Inc. ("Tiger Express"), hauling various goods from South Texas to Houston and Dallas. Tiger Express employed five drivers, including Vice President Juan Rodriguez ("Rodriguez"), Dennis Ferrer-Mora ("Mora"), and Cabrera.

From July 2012 until November 2012, three Tiger Express drivers and Peter Martin ("Martin"), a non-employee of Tiger Express, were arrested for transporting illegal immigrants. Each of the arrested drivers used trailers registered to Tiger Express employees. For example, Martin, although not a driver for Tiger Express, used Mora's trailer to transport 11 undocumented immigrants. Mora used Rodriguez's trailer to transport 20 illegal aliens. Rodriguez transported 13 illegal aliens in Cabrera's trailer, and Cabrera transported 14 immigrants in his own trailer.

The evidence establishes that on October 11, 2012 Cabrera went to L&F Distributors in Harlingen, Texas to pick up a load of empty pallets to bring to Houston, Texas. Once at L&F, a crew loaded the pallets in Cabrera's trailer. Neither L&F nor Cabrera installed a "seal" on the trailer's rear doors before leaving L&F that afternoon.[2] Instead of driving directly to Houston, Cabrera went through Laredo, Texas, adding approximately 150 miles to his trip.

Sometime later that afternoon, a tractor-trailer matching the description of Cabrera's drove out to a secluded road, somewhere between Harlingen and Laredo, and picked up illegal immigrants. The aliens paid more than $2,000

---

[1] We derive the facts from the evidence presented at trial, viewing them in the light most favorable to the verdict. *United States v. Chon*, 713 F.3d 812, 818 (5th Cir. 2013).

[2] According to the testimony at trial, a "seal" is a metal band that has a serial number on it. The goal of the seal is to verify the integrity of the load.

2

No. 13-40826

to smugglers in Mexico to arrange their border crossing and transportation within the United States.

At approximately 8:00 p.m. that night, Cabrera approached a Border Patrol checkpoint on Interstate Highway 35 in an orange tractor with a Tiger Express logo on its door pulling a white trailer. Border Patrol Agent Kajoya Daniels's ("Agent Daniels's") K-9 alerted to Cabrera's trailer. Agent Daniels told another Border Patrol agent to send the truck to secondary inspection. Once there, Agent Daniels removed the seal Cabrera installed on the rear doors sometime after leaving L&F. Agent Daniels then looked in the trailer and saw hundreds of pallets in disarray. Because of the pallets' precarious position, Agent Daniels determined it was unsafe to enter the trailer. Instead, Border Patrol agents scanned the trailer with an x-ray machine. The x-ray revealed several individuals hiding in between the pallets in the trailer. The Border Patrol agents pulled 14 illegal immigrants from the trailer, including Marin Delgado-Valdivia ("Valdivia") and Jose Rodriguez-Delgado ("Delgado").

Cabrera was charged by superseding indictment with conspiracy to transport an illegal alien, within the United States, for the purpose of commercial advantage or private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). He was also charged with two counts of transporting an undocumented alien within the United States, knowing or in reckless disregard of the alien's illegal status in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). A jury convicted Cabrera on all three counts and the court imposed a concurrent 45 month term of imprisonment on each count followed by a three-year term of supervised release.

## II. DISCUSSION

On appeal, Cabrera challenges his conviction and sentence. He argues that there was insufficient evidence to establish that he transported an illegal alien for financial gain and that he agreed with another person to transport

No. 13-40826

the aliens. He also argues that the district court clearly erred in attributing to him all of the illegal aliens smuggled throughout the conspiracy for sentencing purposes. Finally, Cabrera argues that the district court imposed a substantively unreasonable sentence.

## A. Sufficiency of the Evidence

For purposes of this appeal, we assume, without deciding, that Cabrera properly preserved his sufficiency of the evidence challenges by moving for a judgment of acquittal at the close of the government's case. We review properly preserved sufficiency claims *de novo*.[3] "Viewing the evidence in the light most favorable to the prosecution, we consider whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[4] We accept all credibility determinations and reasonable inferences made by the jury, and resolve "any conflicts in the evidence . . . in favor of the verdict."[5]

### i. Transporting an Alien within the United States

A conviction for knowingly transporting an alien within the United States for commercial advantage or private financial gain requires the government to prove beyond a reasonable doubt:

> (1) that an alien had entered or remained in the United States in violation of the law; (2) that the defendant knew or recklessly disregarded the fact that the alien was in the United States in violation of the law; (3) that the defendant transported the alien within the United States with intent to further the alien's unlawful presence; and (4) that the offense was done for the purpose of commercial advantage or private financial gain.[6]

---

[3] *Chon*, 713 F.3d at 818.

[4] *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (internal quotation marks omitted) (emphasis in original)).

[5] *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990).

[6] 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324 (a)(1)(B)(i).

4

No. 13-40826

Cabrera presents two challenges regarding the sufficiency of the evidence supporting his conviction on the two substantive counts. First, he argues that the evidence was insufficient to establish the second element—whether he knew he was transporting illegal immigrants. Next, Cabrera argues that the evidence was insufficient to establish the fourth element— that he received money for transporting the immigrants.

Turning first to the knowledge element, the trial testimony from two material witnesses, Valdivia and Delgado—two Mexican nationals who had no legal right to enter the United States—establishes that they each paid money to be smuggled across the border and through the Border Patrol checkpoint in a tractor-trailer. Valdivia and Delgado were driven to a secluded road on the outskirts of McAllen, Texas and told to board Cabrera's tractor-trailer. At trial, both Valdivia and Delgado identified Cabrera's tractor-trailer. The government also presented evidence establishing that Cabrera was nervous when questioned by the Border Patrol agents, and that Cabrera did not take the most direct route to Houston, but instead went out of his way to Laredo, Texas. We conclude based on this circumstantial evidence that a rational trier of fact could infer that Cabrera knew there were persons in his trailer and that he knew or recklessly disregarded the fact that those persons were unlawfully present in the United States.

Moving to the financial gain element, the government presented sufficient circumstantial evidence for a rational jury to conclude that Cabrera acted for financial gain. None of the immigrants Cabrera transported had any personal relationship with Cabrera. Valdivia and Delgado paid approximately $2,500 to be smuggled across the border and transported to Houston. When he was arrested, Cabrera had approximately $500 in his pocket. A non-pecuniary reason for Cabrera's transportation of these immigrants never came

5

No. 13-40826

to light.  Based on this evidence, a reasonable juror could find that Cabrera transported the illegal immigrants for financial gain. [7]

We conclude that a rational juror could have found the essential elements of the crime beyond a reasonable doubt.

## ii. Conspiracy to Transport an Illegal Alien Within the United States

To obtain a conspiracy conviction under 8 U.S.C. 1324(a)(1)(A)(v)(I), the government must establish:

> (1) that the defendant and at least one other person made an agreement to commit the crime of transporting an alien within the United States for the purpose of commercial advantage or private financial gain; (2) that the defendant knew the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully. [8]

In order to sustain a conspiracy conviction, we must find that a rational juror could conclude beyond a reasonable doubt that "an agreement existed to violate the law and each conspirator knew of, intended to join, and voluntarily participated in the conspiracy."[9] "The agreement to violate the law does not have to be 'explicit or formal;' a tacit agreement is sufficient."[10]  The existence of an agreement may be established by circumstantial evidence and inferred

---

[7] *See United States v. Pineda-Jimenez*, 212 F. App'x 369, 372 (5th Cir. 2007) (personal relationship with the transporter is one factor considered for inferring an agreement); *See also United States v. Allende-Garcia*, 407 F. App'x 829, 834 (5th Cir. 2011) (collecting cases) (evidence establishing that money was paid to someone in the smuggling operation and that the defendant participated in the operation and did not have a non-pecuniary explanation for his conduct is sufficient evidence to support a finding of financial gain); *United States v. Aviles*, 313 F. App'x 964, 966 (9th Cir. 2009) (defendant "does not claim he either knew or was related to the aliens in his truck, which supports the reasonable inference that he sought financial gain for transporting them.").

[8] *United States v. Granadeno*, 2015 WL 1260436, *1 (5th Cir. Mar. 19, 2015)(quoting 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i)).

[9] *United States v. Davis*, 226 F.3d 346, 354 (5th Cir. 2000).

[10] *Chon*, 713 F.3d at 818 (citation omitted).

from a "concert of action" between the conspirators.[11]  "Association or presence can be sufficient to prove knowing participation in the agreement if combined with other supporting circumstantial evidence.  A jury may find knowledgeable, voluntary participation from presence when it would be unreasonable for anyone other than a knowledgeable participant to be present."[12]

We disagree with Cabrera's argument that the evidence is insufficient to prove that he agreed with one or more persons to transport illegal aliens for private financial gain.

Border Patrol apprehended four drivers associated with Tiger Express for smuggling illegal aliens, within a four month period.  In committing these crimes, the drivers used trailers registered to other Tiger Express employees. For example, the government submitted evidence establishing that Rodriguez, the Vice President of Tiger Express, smuggled thirteen illegal immigrants in Cabrera's trailer.  Moreover, the material witnesses described almost identical circumstances surrounding their border crossing and transportation by the Tiger Express drivers.  The evidence establishes that all the immigrants were driven from a group of similar stash houses in McAllen, Texas to a secluded road.  The driver delivering them to the pickup location told the aliens to hide in the brush until a tractor-trailer arrived.  Once the truck stopped on the road, the immigrants were told to jump in the trailer and hide.  These witnesses also described the pickup spot as being open on one side with a tree line on the other.  The similar circumstances surrounding the different transportations supports an inference of an agreement between the Tiger Express employees

---

[11] *Id.* (citation omitted).

[12] *United States v. Martinez*, 190 F.3d 673, 676 (5th Cir. 1999) (internal citations omitted).

No. 13-40826

and the smugglers delivering the aliens. Finally, the most direct path to Houston would not have been via Laredo and would not have included the secluded road. Viewing all of this evidence in a light favorable to the verdict, a jury could reasonably infer that Cabrera agreed with one or more persons to commit the crime of transporting an alien within the United States.

## B. Sentencing

Cabrera first challenges the district court's application of a six-level base offense level enhancement for transporting between 25 and 99 immigrants. [13] The court added 44 immigrants to the 14 Cabrera personally transported to reach this level. It is uncontested that his co-conspirators transported 44 illegal aliens.

We again assume, without deciding, that Cabrera properly preserved this challenge for appeal. Therefore, we review his challenge *de novo*. Under the *de novo* standard, we review a district court's interpretation and application of the Sentencing Guidelines *de novo*, and its factual findings for clear error.[14] The number of illegal immigrants attributable to the offense for which the defendant is being sentenced is a factual finding reviewed for clear error.[15] Thus, this Court need only determine whether the district court's finding is "plausible in light of the record as a whole."[16]

The district court's application of the six-level enhancement based on the number of illegal aliens transported in the conspiracy is not clearly erroneous. "When there is a jointly undertaken criminal activity, relevant conduct . . . extends to all reasonably foreseeable acts and omissions of others in

---

[13] U.S.S.G. §§ 2L1.1(a)(3) and 2L1.1(b)(2)(B).

[14] *United States v. Zuniga,* 720 F.3d 587, 590 (5th Cir. 2013).

[15] *United States v. Williams*, 610 F.3d 271, 292 (5th Cir. 2010).

[16] *Id.*

furtherance of the jointly undertaken criminal activity."[17]    Cabrera transported 14 illegal immigrants and his co-conspirators transported 44 illegal immigrants.  The district court was not clearly erroneous in concluding that Cabrera could reasonably foresee that his co-conspirators would transport illegal immigrants pursuant to their agreement.

Finally, Cabrera challenges the substantive reasonableness of his sentence, arguing that he should have received a downward variance based on his minor role in the conspiracy.

The district court sentenced Cabrera to 45 months of imprisonment—a within guidelines sentence.  "When, in its discretion, a court imposes a sentence falling within a properly calculated guideline range, such a sentence is presumptively reasonable."[18]  "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."[19]

Cabrera has made no such showing.  He has not pointed to any facts demonstrating that the district court erred by refusing to grant his request for a downward variance.

## III.  CONCLUSION

Because a rational trier of fact could conclude that the government presented sufficient evidence to establish that Cabrera transported and conspired to transport illegal aliens within the United States for financial gain,

---

[17] *Id.* (internal quotation marks omitted).

[18] *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 766 (5th Cir. 2008) (citations omitted).

[19] *United States v. Hernandez-Herrera*, 429 F. App'x 382, 388 (5th Cir. 2011) (citing *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009)).

we AFFIRM his conviction.  We also conclude that the district court did not err in imposing a sentence within the calculated Guidelines range.  We therefore AFFIRM Cabrera's sentence.

AFFIRMED.