# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 11, 2024

Lyle W. Cayce
Clerk

————————

No. 21-30720

————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Dwight Alexander,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CR-197-1

———————————————————————

Before Stewart, Dennis, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellant Dwight Alexander was convicted by a jury of conspiracy to possess heroin and cocaine hydrochloride, distribution of heroin, possessing a firearm as a felon, and structuring transactions to evade federal reporting requirements. He now appeals, raising two issues: (1) whether the district court abused its discretion by admitting evidence of Alexander's prior testimony; and (2) whether there is sufficient evidence

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-30720

against him for this court to uphold his drug conspiracy conviction. For the following reasons, we AFFIRM.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Alexander was originally charged in October 2016 by a one-count complaint with possessing a firearm as a felon following a warranted search of his house. During that search, the police found a firearm, large quantities of chemicals frequently used as cutting agents for narcotics, and cash. After the initial charge, Alexander met with investigators to discuss his options. According to a November 3, 2016, e-mail memorializing plea negotiations, the Government offered to not seek additional charges against Alexander if he agreed to (1) plead guilty to a two-count bill of information charging him with conspiring to distribute heroin and possessing a firearm as a convicted felon; (2) not contest the forfeiture of certain assets; and (3) cooperate with the Government. The e-mail also noted that if Alexander's cooperation rose to the level of "substantial assistance," the Government would move the district court for a downward departure from the U.S. Sentencing Guidelines at the time of his sentence. Consistent with that e-mail, Alexander then filed a document waiving his right to be charged by an indictment on November 8, 2016. The Government filed a bill of information the following day, charging Alexander with two counts: conspiracy to distribute heroin and possessing a firearm as a felon. On November 10, Alexander was arraigned before a magistrate judge and entered a plea of not guilty to both counts. A couple of weeks later, the Government sent Alexander a formal plea agreement and factual basis consistent with their previous discussions. On December 14, Alexander filed a motion to substitute counsel and continue the case, which the court promptly granted.

After retaining new counsel, Alexander continued to cooperate with investigators. As part of his cooperation, he assisted the Government with its

investigation and prosecution of one of his co-conspirators, Cornell Pendleton. During a proffer prior to Pendleton's trial, while accompanied by his new attorney, Alexander told government agents that while visiting a barbershop frequented by drug dealers, he learned about a product called superior mannitol, a cutting agent for narcotics. After doing some research on the product, Alexander reportedly found that selling cutting agents to drug dealers could be a lucrative enterprise, and he began buying, packaging, and selling them in bulk. Specifically, he labeled his combination of cutting agents as "Bonita," which he sold for $1,000 per kilogram. Alexander also informed investigators during that proffer that he could mix Bonita in two colors: white for cutting cocaine and brown for cutting heroin.

On April 25, 2017, Alexander testified at Pendleton's criminal trial as a government witness. Alexander made multiple self-incriminating statements during his testimony, including that he sold his Bonita to cocaine and heroin dealers with the knowledge that they were using the product to cut narcotics. He also admitted that he was guilty of conspiring to distribute heroin and feloniously possessing a firearm. During his testimony, Alexander acknowledged that he had yet to sign his plea agreement with the Government, but "was trying to get everything in order to facilitate and finalize everything." He noted in his testimony that his plea agreement "goes out the door" if he were to lie on the stand—due to the cooperation requirement—and that he would be charged with perjury and serve "two years extra time." Alexander also stated that although he intended to sign the plea agreement, he could still continue with his initial not guilty plea at that time.

After the Pendleton trial, Alexander changed counsel again and began to have second thoughts about his plea agreement, which he formally rejected

No. 21-30720

during a *Frye*[1] hearing on October 24, 2017. During the *Frye* hearing, the district court discussed the terms of the proposed plea agreement. Alexander confirmed that he understood that the Government was no longer bound by it should he choose to go to trial and that the Government was likely to add additional charges. Nevertheless, he rejected the plea agreement. On December 8, 2017, the grand jury returned a superseding indictment, charging Alexander with five total counts: the two counts contained in the bill of information, as well as two counts of distributing heroin, and one count of possession of a firearm in furtherance of a drug trafficking crime. That same day, apparently proceeding pro se, Alexander filed a document criticizing his current and former attorneys and accusing them of tricking him into waiving the indictment. He also claimed for the first time that prior to testifying in the Pendleton trial, a government attorney met with him, rehearsed his testimony, and informed him he had immunity as a result of his testimony.

On January 26, 2018, a grand jury returned another superseding indictment, containing the five counts in the previous indictment and a sixth count of structuring to avoid bank reporting requirements under 31 U.S.C. § 5234(a)(3), (d)(2). After again obtaining new counsel, Alexander filed a motion in limine to exclude his Pendleton trial testimony. He argued that on the day of the Pendleton trial, the U.S. Marshals brought him to the courthouse, where he met with Assistant United States Attorney William McSherry (AUSA) prior to testifying. The motion alleged that "McSherry expressly promised Mr. Alexander that he need not be nervous about

---

[1] *Missouri v. Frye*, 566 U.S. 134, 142 (2012) (explaining that the hearing provides an opportunity to establish on the record "the defendant's understanding of the plea and its consequences" and "affords . . . substantial protection against later claims that the plea was the result of inadequate advice").

testifying because he would be granted immunity against further prosecution."

In response, the Government argued that no such promises were made, submitting affidavits from both the AUSA and a U.S. Drug Enforcement Administration case agent (who was also present during meetings with Alexander) stating that they never promised immunity and that Alexander was eager to testify in the hopes that the Government would move for a downward departure during his sentencing.

The district court denied the motion in limine. It found that there was not "an inkling of evidence showing that there was a meeting of the minds regarding a grant of immunity." Further, "[Alexander]'s testimony from the Pendleton trial makes clear that [he] knew the government was offering a favorable plea agreement in exchange for his testimony rather than any sort of immunity." Alexander's case proceeded to trial.

At trial, Alexander proceeded under the theory that he was a legitimate businessman selling a lawful substance and was not involved in a drug conspiracy. In addition to the Pendleton trial testimony transcript, the evidence against him included testimony of several drug dealers who bought Bonita directly from Alexander, large quantities of Bonita and cash seized from Alexander's residence pursuant to a search warrant, and Alexander's own testimony that he knew drug dealers were buying Bonita. Alexander's counsel objected to the introduction of the Pendleton testimony again during trial, which the district court overruled. Alexander also moved for acquittal at the close of the Government's case, which the court denied.

The jury found Alexander guilty of conspiracy to distribute heroin and cocaine hydrochloride, two counts of distributing heroin, possession of a firearm as a felon, and structuring transactions to evade federal reporting requirements. It found him not guilty of possessing a firearm in furtherance

of a drug trafficking crime. After the verdict, Alexander again moved for acquittal, which the court again denied. The district court sentenced him to 136 months in prison for the drug conspiracy and concurrent 120-month terms for the remaining counts. Alexander timely filed a notice of appeal.

## II.   STANDARDS OF REVIEW

Alexander preserved our review of the district court's evidentiary ruling by raising the issue in his motion in limine and renewing his objection when the evidence was introduced at trial. *See* FED. R. EVID. 103(a)(1). Accordingly, we review the district court's evidentiary ruling for abuse of discretion. *United States v. Girod*, 646 F.3d 304, 318 (5th Cir. 2011). "[F]or any of the evidentiary rulings to be reversible error, the admission of the evidence in question must have substantially prejudiced [the defendant's] rights." *Id.* (quoting *United States v. Sanders*, 343 F.3d 511, 519 (5th Cir. 2003)). We review the district court's factual findings for clear error. *United States v. Jimenez*, 256 F.3d 330, 345 (5th Cir. 2001). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013) (citation omitted).

Because Alexander moved for acquittal at the close of the Government's case and after the verdict, we review his challenge to the sufficiency of the evidence de novo. *See United States v. Oti*, 872 F.3d 678, 686 (5th Cir. 2017). On de novo review, we determine whether, "after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc) (emphasis in original) (citation omitted). Appellate review of a sufficiency-of-the-evidence claim is highly deferential to the jury's verdict. *United States v. Chon*, 713 F.3d 812, 818 (5th Cir. 2013) (citation omitted).

No. 21-30720

## III. DISCUSSION

## A. Alexander's Pendleton Trial Testimony

On appeal, Alexander argues that, based upon the plea agreement and the AUSA's alleged promise of immunity on the day of the Pendleton trial, he could have reasonably believed that he had either equitable or informal immunity from the use of his Pendleton trial testimony or from further prosecution beyond the plea agreement. Thus, he contends, the district court erred when it denied his motion in limine to exclude the Pendleton trial testimony. We disagree for three reasons: (1) Alexander failed to establish that the Government promised him immunity; (2) the Government's offer of a plea agreement did not confer any immunity; and (3) even if the Government's plea agreement offered some immunity, Alexander failed to abide by the terms of the agreement.

As both parties acknowledge, the threshold question to determine whether Alexander is entitled to any form of immunity—equitable, informal, or otherwise—is whether the Government made him a promise of immunity. To interpret the existence and scope of an immunity agreement, we apply general principles of contract law. *United States v. Cantu*, 185 F.3d 298, 302 (5th Cir. 1999). "Applying contract law, the defendant bears the burden of proving that there was a mutual manifestation of assent—either verbally, or through conduct—to the agreement's essential terms." *Jimenez*, 256 F.3d at 347 (citation omitted). This analysis must include "both subjective and objective factors in determining whether the defendant has carried his burden." *Id.* (citation omitted).

First, Alexander's argument that this "mutual manifestation of assent" is evidenced by his reasonable expectation of immunity from the AUSA's alleged promise just prior to the Pendleton trial is unavailing. Alexander never challenged the district court's finding that there was no

evidence in the record "showing there was a meeting of the minds regarding a grant of immunity for defendant in exchange for his testimony in the Pendleton trial." And he admits that he did not present "evidence to contradict the position of the government or the trial court's finding." Because he failed to identify any error in the district court's finding, he waived any argument demonstrating that there was a "mutual manifestation of assent" on appeal. *See Ramey v. Davis*, 942 F.3d 241, 248 (5th Cir. 2019) (finding that "[a] failure to identify error in the district court's reasoning constitutes waiver") (citation omitted); *United States v. McBride*, 402 F. App'x 909, 911 (5th Cir. 2010) (when reviewing for an abuse of discretion, "where an appellant fails to identify error in the district court's analysis, it is the same as if he had not appealed that issue") (citation omitted).

Second, Alexander's argument that the unsigned plea agreement was "sufficient to serve as an informal immunity agreement upon which [he] could rely in continuing to debrief and in testifying" is belied by the record. Alexander offers no support for his argument that an unsigned agreement could serve as the basis of informal or equitable immunity. Due to inadequate briefing, that argument is forfeited. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.") (citation omitted).

Third, even if we were to accept the, thus far, unrecognized possibility that an unsigned plea agreement could provide immunity, Alexander still would not be entitled to that immunity. In other cases where courts have found equitable immunity, the defendants have been able to show "that [they] complied in good faith with the terms of the agreement." *See, e.g.*, *Rowe v. Griffin*, 676 F.2d 524, 528 (11th Cir. 1982). But Alexander violated the terms of the proposed plea agreement by failing to plead guilty, which he even acknowledged during the *Frye* hearing. He cannot claim the benefits of a bargain that he failed to uphold.

All told, Alexander failed to satisfy his burden of showing a mutual manifestation of assent to either the alleged agreement just before the Pendleton trial or the unsigned plea agreement. *See Jimenez*, 256 F.3d at 347. Alexander also failed to show that he complied in good faith with the terms of the rejected plea agreement. Thus, we find that the district court did not abuse its discretion when it denied Alexander's motion in limine to exclude his testimony during the Pendleton trial.

## B. Sufficiency of the Evidence

Alexander also challenges the sufficiency of the evidence to support the drug conspiracy alleged in count one. He argues that without the testimony from the Pendleton trial, a rational jury could not have found that he knowingly participated in a drug conspiracy. Because we find that Alexander's testimony from the Pendleton trial was properly admitted, Alexander's sufficiency of the evidence argument fails.

## IV.  CONCLUSION

For these reasons, the district court's judgment is AFFIRMED.