# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40560

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

YUDELUIS ALBERTO JIMENEZ-ELVIREZ,

> Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2017

Lyle W. Cayce
Clerk

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before SMITH, PRADO, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Yudeluis Alberto Jimenez-Elvirez was convicted by a jury in the Southern District of Texas of one count of conspiracy to transport and attempt to transport an undocumented alien within the United States and five counts of aiding and abetting the transport and attempted transport of an undocumented alien within the United States for commercial advantage and private financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I)–(II). The district court sentenced Jimenez-Elvirez to concurrent sentences of 97 months on each count, followed by concurrent three-year terms of supervised release.

No. 16-40560

Jimenez-Elvirez appeals his convictions and sentences on the following grounds: (1) the evidence is insufficient to support his convictions; (2) the district court erroneously admitted evidence of a prior illegal transport offense Jimenez-Elvirez committed on June 30, 2015; (3) the district court erroneously imposed a sentence enhancement under U.S.S.G. § 2L.1(b)(3)(A) for committing the instant offense after sustaining a conviction for a prior felony immigration offense because the predicate conviction was not final; (4) the district court improperly "triple counted" the prior felony immigration conviction for purposes of calculating Jimenez-Elvirez's Guidelines range; and (5) the prosecutor impermissibly bolstered the testimony of one of the Government's witnesses during closing argument. For the following reasons, we AFFIRM.

## I.     BACKGROUND

On the night of October 7, 2015, United States Border Patrol ("USBP") Agents Robert Bomar, Felipe Martinez, and Esteban Martinez ("Martinez") were manning the USBP checkpoint near Freer, Texas. At approximately 10:35 pm, a black 18-wheeler tractor truck hauling a white trailer pulled up to the checkpoint, followed immediately by a black Chevrolet Tahoe. The tractor, the trailer, and the Tahoe all had Florida license plates. The words "Iron Horse Logistics, Inc." appeared on the side of the tractor. Bomar testified that there was nothing initially suspicious or unusual about either vehicle or their drivers.

Bomar conducted an immigration check of the tractor-trailer and its driver, Ricardo Gallo, and, upon confirming Gallo's lawful presence in the United States, let him proceed. The agents then checked the Tahoe, which was occupied only by Jimenez-Elvirez. As the Tahoe approached the inspection area, the electronic license plate reader ("LPR"), operated by Felipe Martinez, alerted that criminal activity or abnormal travel patterns had been associated

2

with the Tahoe's license plate. Specifically, a vehicle bearing Florida plate # 9546CM had been used to smuggle 17 illegal aliens through a USBP checkpoint near Laredo, Texas in July 2015. Upon further inspection, however, the agents verified that the Tahoe's license plate did not match the alert. Given the quick procession of the tractor-trailer and the Tahoe past the LPR, the agents suspected that the alert was in fact a "delayed hit" on the trailer. A review of the LPR confirmed that Florida plate # 9546CM belonged to a trailer co-owned by Gallo and Iron Horse Logistics.

Martinez and Felipe Martinez set off in an unmarked USBP car to intercept the tractor-trailer and verify its license plate. After driving for approximately 10 minutes, Martinez observed the Tahoe following roughly five feet behind the tractor-trailer. The Tahoe did not attempt to pass the tractor-trailer, despite the absence of oncoming traffic, which Martinez noted was inadvisable given the danger of riding so close behind a tractor-trailer. Martinez twice attempted to pass the Tahoe in the oncoming lane, but the Tahoe would not yield. He also flashed his bright lights at the Tahoe, but the Tahoe did not react. Martinez opined that although he was not sure of Jimenez-Elvirez's level of visibility, he should have been able to discern that the USBP truck was an official government vehicle.[1]

Based on his experience, Martinez concluded that the behavior of the drivers of the tractor-trailer and the Tahoe—travelling the same direction at the same speed in close proximity and not allowing other vehicles to pass— indicated that they were riding "in tandem." He explained to the jury that when riding "in tandem," the front, or "load," vehicle will often contain

---

[1] Martinez testified that although the USBP truck was unmarked, it had an interior emergency light bar in the windshield that was visible from the outside even at night and a reflective steel K-9 cage that could "giv[e] off the impression" that it was a law enforcement vehicle and not a "regular" truck.

narcotics or illegal aliens, while the driver of the rear, or "scout," vehicle will seek to draw law enforcement attention away from the "load" vehicle by committing traffic offenses. Martinez suspected that Jimenez-Elvirez was acting as a "scout" for the tractor-trailer and attempting to impede his investigation.

Martinez activated his emergency lights, and the driver of the Tahoe stopped and pulled over in a "very sudden" manner. Martinez noted that such behavior is typical of "scout" vehicle drivers, who will sometimes brake suddenly in order to induce a collision with pursuing law enforcement, thus allowing the "load" vehicle to get away. While USBP Agent Luis Pena conducted the stop of the Tahoe, Martinez pursued and stopped the tractor-trailer. Inside the trailer he discovered 27 undocumented aliens.

At trial, five of the people found inside the trailer—Sergio Maya, Raquel Perez-Lopez, Ana Garduza-Lazaro, Alejandra Balderas-Lopez, and Basilia Maldonado-Aguilar—testified that they were Mexican or Guatemalan citizens and were in the United States illegally. Maya, Garduza-Lazaro, and Maldonado-Aguilar also testified that either they or their families had paid between $1,200 and $2,000 in Mexico for their transportation into and through the United States. All of the aliens testified that it was too dark to discern the identity of anyone present at the time they entered the trailer other than the driver of the tractor truck. None of the aliens identified Jimenez-Elvirez.

Department of Homeland Security special agent Christopher Durkee also testified regarding his investigation and arrest of Jimenez-Elvirez on June 30, 2015, for illegally transporting 17 aliens near Laredo, Texas (the "June 30 offense"). Jimenez-Elvirez pleaded guilty to this offense on October 7, 2015 (the same day he committed the instant offense). Durkee noted that Jimenez-Elvirez had transported the aliens in the same black tractor-trailer belonging to Iron Horse Logistics and registered to Gallo, which Gallo was driving

No. 16-40560

through the Freer checkpoint on October 7.  At trial, the district court permitted the Government to introduce evidence of the June 30 offense to rebut Jimenez-Elvirez's claims that he was merely present at the scene.  The district court admitted the evidence over Jimenez-Elvirez's objection, finding that it was part of the same conspiracy or, alternatively, that it was relevant under Rule 404(b) of the Federal Rules of Evidence to show motive, intent, absence of mistake, or lack of accident.

The jury convicted Jimenez-Elvirez on all counts.  The presentence report ("PSR") calculated an advisory Guidelines range of 78 to 97 months of imprisonment, based on, *inter alia*, a six-level enhancement, under U.S.S.G. § 2L1.1(b)(2)(B), because Jimenez-Elvirez transported between 25 and 99 aliens; a two-level enhancement, under § 2L1.1(b)(3)(A), because he committed the instant offense after his conviction for a prior felony immigration offense; and a three-level enhancement, under U.S.S.G. § 3C1.3, because he committed the instant offense while on supervised release following his guilty plea for the June 30 offense.  Adopting the PSR, the district court imposed concurrent sentences of 97 months on each count, followed by concurrent three-year terms of supervised release on each count.  Jimenez-Elvirez timely appealed.

## II.    DISCUSSION

Jimenez-Elvirez argues that (1) the evidence is insufficient to support his convictions on the conspiracy count and each of the five aiding and abetting counts; (2) the district court erroneously admitted evidence of the June 30 offense because it was irrelevant and highly prejudicial extraneous conduct; (3) the district court erroneously imposed a sentence enhancement pursuant to the recidivist provision, U.S.S.G. § 2L.1(b)(3)(A), because it was based on his conviction for the June 30 offense, which was not yet final on the date he committed the instant offense; (4) the district court improperly "triple counted" the June 30 conviction for purposes of calculating Jimenez-Elvirez's Guidelines

range; and (5) the prosecutor impermissibly bolstered Martinez's testimony during closing argument.  We address each claim in turn.

## A. Sufficiency of the Evidence

Jimenez-Elvirez challenges the sufficiency of the evidence on all counts, arguing that the evidence established only his mere presence at the scene of the crime.  Because he properly preserved his challenge by moving for a judgment of acquittal after the Government rested, which was also at the close of all evidence, we review the denial of his motion for judgment of acquittal de novo.  *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003).  In conducting our review,

> We will affirm the jury's verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict.  Our review of the sufficiency of the evidence does not include a review of the weight of the evidence or of the credibility of the witnesses.

*Id.* (quoting *United States v. Myers*, 104 F.3d 76, 78 (5th Cir. 1997)).

### 1. The Conspiracy Count

To convict a defendant of conspiracy to transport an undocumented alien under 8 U.S.C. § 1324(a)(1)(A)(v)(I), the Government must prove that the defendant: (1) agreed with one or more persons (2) to transport an undocumented alien inside the United States (3) in furtherance of his unlawful presence (4) knowingly or in reckless disregard of the fact that the alien's presence in the United States was unlawful. *United States v. Chon*, 713 F.3d 812, 818 (5th Cir. 2013).  The Government must prove that "each conspirator knew of, intended to join, and voluntarily participated in the conspiracy." *Id.* The elements of conspiracy may be established solely by circumstantial evidence, including "the presence, association, and concerted action of the defendant with others." *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir.

No. 16-40560

2012); *United States v. Bieganowski*, 313 F.3d 264, 277 (5th Cir. 2002). "Although mere presence at the scene of the crime or close association with a co-conspirator alone will not support an inference of participation in a conspiracy, presence is a significant factor to be considered within the context of the circumstances under which it occurs." *United States v. Medina*, 887 F.2d 528, 531 (5th Cir. 1989) (citation omitted).

Jimenez-Elvirez argues that none of the material witnesses identified him as a participant in the conspiracy and that the Government offered no other evidence, such as phone calls, documents, or money, to prove his participation. Thus, he claims, the evidence at trial established only his mere presence at the scene of the crime. We disagree.

Although the evidence tying Jimenez-Elvirez to the conspiracy is circumstantial, reviewed cumulatively in the light most favorable to the verdict, it is sufficient to support a finding beyond a reasonable doubt that a conspiracy existed, that Jimenez-Elvirez knew of the conspiracy, and that he voluntarily participated in it. *See id.* Agent Martinez explained, based on his professional experience, that Jimenez-Elvirez's behavior was typical of someone who was acting in concert with another to commit a smuggling offense by serving as a "scout." Specifically, Martinez testified that he observed Jimenez-Elvirez following only five feet behind the tractor-trailer and that he did not attempt to pass it despite the road being clear, which was odd, given the danger in following that closely behind. Further, Martinez tried to pass the Tahoe twice, but Jimenez-Elvirez would not let him pass. After Martinez turned on his flashing lights, the Tahoe suddenly pulled over, which he testified was typical of the way in which scout vehicle drivers attempt to force collisions with pursuing law enforcement to enable the load vehicle to get away.

Jimenez-Elvirez contends that Martinez's suspicions were speculative and that his behavior can be innocently explained away based on safety

7

concerns. But the jury was free to give weight to Martinez's experience-based testimony that Jimenez-Elvirez's actions were particularly suspicious. *See United States v. Mendoza*, 522 F.3d 482, 489 (5th Cir. 2008). Further, there was evidence that Jimenez-Elvirez recently had been arrested for transporting 17 undocumented aliens in the *same* tractor-trailer Gallo was driving on the night of October 7. This evidence, taken together, sufficiently supports an inference that Jimenez-Elvirez knew about the illegal aliens in Gallo's tractor-trailer, was acting in concert with him, and was not merely fortuitously present at the scene.[2]

### 2. *The Aiding and Abetting Counts*

To prove that Jimenez-Elvirez aided and abetted the transport of an undocumented alien, the Government was required to show that he "associate[d] with the criminal venture, participate[d] in it and [sought] by his actions to make the venture succeed." *United States v. Villenueva*, 408 F.3d 193, 201 (5th Cir. 2005). "The evidence supporting a conspiracy conviction is generally sufficient to support an aiding and abetting conviction as well." *United States v. Ibarra-Zelaya*, 465 F.3d 596, 603 (5th Cir. 2006) (quoting *United States v. Gonzales*, 121 F.3d 928, 936 (5th Cir. 1997)).

Jimenez-Elvirez levels the same argument against his convictions for aiding and abetting as he does against his conspiracy conviction. He contends that the jury could not have relied on Martinez's testimony to support its

---

[2] The cases Jimenez-Elvirez relies upon to show that the evidence is insufficient are inapposite. Unlike *United States v. Maltos*, 985 F.2d 743, 747–48 (5th Cir. 1992), and *United States v. Gardea Carrasco*, 830 F.2d 41, 45 (5th Cir. 1987), in which the evidence established no more than the defendant's association with a co-conspirator or mere presence at the scene of the crime, a rational jury could infer from Jimenez-Elvirez's suspicious behavior, coupled with his past unlawful conduct employing the same modus operandi used in the instant case, that he was a knowing and voluntary participant in the conspiracy.

8

verdict, considering the lack of physical or documentary evidence linking Jimenez-Elvirez to the crime.

His argument again fails to persuade. As previously discussed, assessments regarding the credibility of witnesses and the weight of the evidence are the jury's prerogative, *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993), and "the jury is free to choose among reasonable constructions of the evidence," *United States v. Meza*, 701 F.3d 411, 422–23 (5th Cir. 2012). The jury was entitled to credit Martinez's testimony that Jimenez-Elvirez's behavior was consistent with someone who was acting as a scout for Gallo, who was transporting the 27 undocumented aliens found in his tractor-trailer— testimony which was bolstered by the evidence that Jimenez-Elvirez used the same tractor-trailer some few months earlier to commit the identical offense. A rational jury could conclude that by acting as a scout to draw law enforcement's attention away from the load vehicle transporting illegal aliens, Jimenez-Elvirez "associate[d] with the criminal venture, participate[d] in it and [sought] by his actions to make the venture succeed." *Villenueva*, 408 F.3d at 201.

### B. <u>Admission of Evidence of the June 30 Offense</u>

Jimenez-Elvirez next argues that the district court committed reversible error by admitting evidence of his arrest and plea of guilty to illegally transporting 17 undocumented aliens on June 30, 2015. Before the trial, Jimenez-Elvirez had filed a motion in limine to exclude this evidence. The district court denied the motion on the grounds that the June 30 offense was part of the same conspiracy or, alternatively, that it was relevant under Rule 404(b) of the Federal Rules of Evidence to show motive, intent, absence of mistake, or lack of accident. On appeal, Jimenez-Elvirez claims that evidence of the June 30 offense was not intrinsic to the charged conspiracy, was irrelevant to the charges against him and offered for no other purpose than to

prove improper character, and, even if it was relevant, its probative value was substantially outweighed by its prejudicial effect.

"Generally, we review a trial court's decision to admit evidence for abuse of discretion," *United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005), although we employ a heightened review in criminal cases, *United States v. Pompa*, 434 F.3d 800, 805 (5th Cir. 2005). "Intrinsic evidence is generally admissible, and its admission is not subject to rule 404(b)." *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005). Evidence is considered intrinsic "when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *Id.* (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)).

We are skeptical that the district court had a sufficient basis to find evidence of the June 30 offense intrinsic to the crimes for which Jimenez-Elvirez stood trial. Other than the use of the same tractor-trailer, the Government offered no evidence to link the June 30 offense with the October 7 alien smuggling conspiracy. Nevertheless, we agree with the district court that the evidence was admissible under Rule 404(b) to prove motive, intent, absence of mistake, or lack of accident.

When evidence of another act is extrinsic, its admissibility is subject to Rule 404(b). Under Rule 404(b), evidence of prior crimes, wrongs, or other acts is not admissible to prove the defendant's character in order to show that the defendant acted in conformity with that character on the particular occasion at issue. Fed. R. Evid. 404(b)(1). Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2).

10

We use a two-step test to determine admissibility under Rule 404(b). *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). First, we determine whether the evidence "is relevant to an issue other than the defendant's character." *Id.* "Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Federal Rule of Evidence] 403." *Id.*

"The relevance of extrinsic act evidence 'is a function of its similarity to the offense charged.'" *United States v. Cockrell*, 587 F.3d 674, 678 (5th Cir. 2009) (quoting *Beechum*, 582 F.2d at 911). Jimenez-Elvirez claims that evidence of the June 30 offense is irrelevant because it has no common characteristic to the charged conspiracy. This argument strains common sense. The June 30 and October 7 offenses are identical: the illegal transport of undocumented aliens into the country. Moreover, the identical means of transport were used. Jimenez-Elvirez pleaded guilty to transporting undocumented aliens on June 30, 2015 in the very same tractor-trailer Gallo drove on October 7, which was co-owned by Gallo and Iron Horse Logistics. Finally, "[w]here, as here, a defendant enters a plea of not guilty in a conspiracy case, the first prong of the *Beechum* test is satisfied." *Id.* That is because "[t]he mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence." *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996). Accordingly, the first prong of the *Beechum* test is satisfied.

As for the second prong, although we have recognized that "the more closely the extrinsic offense resembles the charged offense, the greater the prejudice to the defendant," *Cockrell*, 587 F.3d at 679, we also have emphasized that the probative value of extrinsic evidence of similar crimes is relatively great when the defendant "based his defense on a claim that he was merely in the wrong place at the wrong time," *United States v. Hernandez-Guevara*, 162

F.3d 863, 872 (5th Cir. 1998) (holding that district court did not abuse its discretion in admitting evidence of defendant's prior convictions for the same crime of alien smuggling).  The central theory of the defense was that Jimenez-Elvirez was merely and unwittingly present at the scene of the crime.  And, as was significant in *United States v. Hernandez-Guevara*, the other evidence admitted in Jimenez-Elvirez's trial shed little light on his intent and whether his alleged crime was the result of mistake or accident.  *Id.*  Furthermore, the two offenses were close in time, separated by little more than three months.  *See Cockrell*, 587 F.3d at 679 (stating that "the amount of time that separates the extrinsic and charged offenses" is another factor to be considered).  Additionally, the district court gave appropriate limiting instructions to the jury when the evidence was first introduced and before jury deliberations.  Such instructions mitigate the prejudice caused by the admission of prior crimes evidence.  *Id.*  Consequently, the trial court did not abuse its discretion in admitting evidence of the June 30 offense.  *See id.* at 680; *Hernandez-Guevara*, 162 F.3d at 872.

### C. U.S.S.G. § 2L1.1(b)(3) Enhancement Based on Prior Alien Smuggling Conviction

Jimenez-Elvirez also challenges his sentence on a number of grounds.  First, he argues that the evidence does not support the two-level sentence enhancement he received under U.S.S.G § 2L.1(b)(3)(A) for having sustained a prior conviction for a felony immigration offense.  The PSR, which the district court adopted without change, recommended the enhancement based on the June 30 offense charged in case number 5:15-cr-829.[3]  Jimenez-Elvirez pleaded guilty to this offense on the morning of October 7, 2015—mere hours before he

---

[3] A joint PSR was prepared to cover sentencing for Jimenez's June 30, 2015 offense (styled 5:15-cr-829) and the October 7, 2015 offenses at bar (styled 5:15-cr-1313).

committed the instant offenses.  The PSR indicates, however, that the plea was taken by a U.S. magistrate judge, "with a sentencing date to be determined at a later date" before the presiding district court judge.  Thus, Jimenez-Elvirez argues that at the time of his arrest on the current charges, his plea had not yet been accepted by the district court and it was not a final conviction for purposes of § 2L.1(b)(3)(A).[4]

Because Jimenez-Elvirez did not object to the enhancement at sentencing, he concedes that our review is only for plain error.  To prevail on plain error review, Jimenez-Elvirez must show: (1) "an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned"; (2) that is "clear or obvious, rather than subject to reasonable dispute"; and (3) that "affected [his] substantial rights." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal citations omitted).  If these three prongs are satisfied, we have the discretion to remedy the error; however, this discretion "ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Section 2L1.1(b)(3) provides for a two-level enhancement "[i]f the defendant committed any part of the instant offense after sustaining . . . a conviction for a felony immigration and naturalization offense." § 2L1.1(b)(3)(A).  Section 2L1.1 does not itself state when a prior conviction becomes "final" for enhancement purposes.  *See* § 2L1.1 and commentary. Citing our decisions in *United States v. Escobedo*, 757 F.3d 229 (5th Cir. 2014),

---

[4] To provide further support for this argument, Jimenez-Elvirez filed an opposed motion to supplement the record with the docket sheet for case number 5:15-cr-829, which we granted.  The docket sheet indicates that on October 7, 2015, Jimenez-Elvirez consented to administration of the guilty plea by the magistrate judge.  The next day, the magistrate judge issued a report and recommendation recommending that the district court accept Jimenez-Elvirez's plea, which the district court adopted on October 23.

and *United States v. Cessa*, 626 F. App'x 464 (5th Cir. 2015) (unpublished), as well as Federal Rule of Criminal Procedure 11(d), Jimenez-Elvirez contends that his prior conviction did not become final until the district court accepted his guilty plea on October 23, 2015.  Consequently, he argues that the June 30 offense did not support the district court's application of the enhancement.

### 1. Whether the District Court Committed Error

In *Escobedo*, we stated that the defendant "had an absolute right under Federal Rule of Criminal Procedure 11(d)(1) to withdraw his guilty plea before it was accepted by the district court."  757 F.3d at 233–34; *see also id.* at 231 n.1 ("A defendant's initial plea entered during arraignment does not become final until it is accepted by the district court and embodied in the judgment of the court.").  Rule 11(d)(1), in turn, provides that "[a] defendant may withdraw a plea of guilty or nolo contendere . . . before the court accepts the plea, for any reason or no reason[.]"  Fed. R. Crim. P. 11(d)(1).  We affirmed this principle in *Cessa*, 626 F. App'x at 470–71.  In both cases, the defendant had tendered an initial plea of guilty before a magistrate judge, but sought to withdraw his plea before the district court accepted it.

Our Rule 11 jurisprudence derives from the structural guarantees of Article III of the U.S. Constitution and its concomitant constraints on magisterial authority.  In *United States v. Dees*, 125 F.3d 261 (5th Cir. 1997), we recognized the statutory authority of magistrate judges under the "additional duties" clause of the Magistrates Act, 28 U.S.C. § 636(b)(3), to conduct guilty plea allocutions in criminal cases.  *Id.* at 265–66.  But that authority is delegated from and circumscribed by "the exclusive Article III power of a district court to preside over a felony trial."  *Id.* at 267; *see also id.* at 268 ("only Article III judges, not their adjuncts, have the power to dispose of cases or controversies").  We concluded in *Dees* that magistrate judges' conducting plea proceedings did not run afoul of Article III because "[t]he

14

taking of a plea by a magistrate judge does not bind the district court to accept that plea. Rather, the district court retains ultimate control over the plea proceedings, which are submitted to the court for its approval." *Id.* at 268.

These authorities indicate that, under the circumstances, Jimenez-Elvirez's conviction for the June 30 offense was not final at the time he committed the instant offenses. Accordingly, we hold that the district court's reliance on Jimenez-Elvirez's provisional plea of guilty before a magistrate judge to support application of the § 2L1.1(b)(3)(A) enhancement was error.

### 2. *Whether the Error Is Plain*

The Government argues, however, that this error (which the Government does not concede) was neither clear nor obvious because none of the authorities on which Jimenez-Elvirez relies squarely addressed the issue here—when a conviction is final for purposes of § 2L1.1(b)(3)(A). This is true. *Escobedo* addressed the issue of whether a defendant may waive his right under Rule 11(f) and Federal Rule of Evidence 410 to exclude evidence in a jury trial of the withdrawal of his guilty plea and associated inculpatory statements. 757 F.3d at 232–34. The waiver of that right was included in a provision of the plea agreement, triggered if the defendant breached the agreement, and the Government so alleged. *Id.* at 233. Because the district court had not accepted the defendant's plea—taken by a magistrate judge during a rearraignment hearing—before he withdrew it, we concluded that the waiver did not become effective under the circumstances. *Id.* at 234. In *Cessa*, we reversed the denial of the defendant's motion to withdraw his guilty plea, which was filed after entry of the plea before a magistrate judge, but prior to the district court's acceptance of it. 626 F. App'x at 469–71.

We have previously observed that a "lack of binding authority is often dispositive in the plain-error context." *United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir. 2015); *see also United States v. Garcia-Gonzalez*, 714 F.3d 306,

318 (5th Cir. 2013) (declining to find clear or obvious error where both parties acknowledged that the defendant's unpreserved argument raised an issued of first impression); *United States v. Hull*, 160 F.3d 265, 272 (5th Cir. 1998) ("Because [the defendant's] theory requires the extension of precedent, any potential error could not have been 'plain.'").

However, given the constitutional constraints on magistrates' authority, which we discussed at length in *Dees*, and a defendant's absolute and unqualified right under Rule 11(d) to withdraw a guilty plea prior to its acceptance by the district court, the matter is hardly "subject to reasonable dispute." *Puckett*, 556 U.S. at 135. In any event, we need not decide whether the error here is plain as that term is interpreted under our precedent because, as discussed *infra*, the circumstances of this case do not call for our exercise of limited discretion to correct this legal error.

### 3. Whether the Error Affected Substantial Rights

As for the third prong of plain-error review, Jimenez-Elvirez must show that the error affected his substantial rights, *i.e.*, "a reasonable probability that, but for the error, he would have received a lesser sentence." *United States v. Hebron*, 684 F.3d 554, 559 (5th Cir. 2012). Jimenez-Elvirez contends that the error was prejudicial because application of the two-level enhancement resulted in a higher Guidelines range—78 to 97 months versus 63 to 78 months. "When a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Although this presumption may be rebutted by a showing that the erroneous Guidelines range did not affect the district court's sentence, *see id.* at 1346, there is no indication in the record that the district court would have sentenced Jimenez-Elvirez to 97 months, the

very top of the range it calculated, absent the erroneous calculation. Therefore, Jimenez-Elvirez has shown that the error affected his substantial rights.

### 4. Whether We Should Exercise Discretion to Reverse and Remand

Nonetheless, this is not a case that calls for the exercise of our discretion to reverse. As an initial matter, Jimenez-Elvirez's argument regarding the fourth prong of plain-error review is sparse and essentially indistinguishable from his prong-three argument. "Importantly, the burden is on the defendant to demonstrate that the error affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Andaverde-Tinoco*, 741 F.3d 509, 523 (5th Cir. 2013). Although we decline to find that Jimenez-Elvirez forfeited this argument, he has not made a strong showing that abstaining from error correction in his case would result in "a miscarriage of justice," *Olano*, 507 U.S. at 736.

"We sometimes exercise discretion to correct a plain error where the imposed sentence is 'materially or substantially above the properly calculated range.'" *United States v. Rosales-Mireles*, 850 F.3d 246, 250 (5th Cir. 2017) (quoting *United States v. John*, 597 F.3d 263, 289 (5th Cir. 2010)); *see also, e.g.*, *United States v. Mudekunye*, 646 F.3d 281, 290–91 (5th Cir. 2011) (concluding that substantial disparity of 19 months between imposed sentence and applicable Guidelines range warranted exercise of discretion to correct the error absent evidence suggesting that court would have imposed the same sentence irrespective of the correct Guidelines range). But even a large gap between the imposed sentence and the correct Guidelines range does not call for correction where other factors counsel against it. This is such a case.

Jimenez-Elvirez's conduct falls within the heartland of § 2L.1(b)(3)(A)'s purpose to punish recidivist conduct. Jimenez-Elvirez pleaded guilty to the June 30 alien smuggling offense on the morning of October 7, 2015. He then participated in the commission of an identical offense that same evening.

Where the sentence is otherwise clearly supported by the facts of the case, we have declined to exercise our discretion to remand. *See, e.g.*, *United States v. Davis*, 602 F.3d 643, 651–52 (5th Cir. 2010) (declining to correct sentencing guidelines error in case where defendant was found violating numerous terms of his supervised release five months into his five-year sentence and apparently planning a return to his prior criminal activities); *United States v. Jones*, 489 F.3d 679, 682 (5th Cir. 2007). It is only happenstance that Jimenez-Elvirez's conviction for the June 30 offense was not final at the time he committed the instant offenses. Under the circumstances, we do not think that the error here "affected the fairness, integrity, or public reputation of judicial proceedings." *See Puckett*, 556 U.S. at 135.

**D. The District Court's "Triple Counting" of the June 30 Offense**

Jimenez-Elvirez also claims the district court erred when it impermissibly "triple counted" the June 30 offense by "using the same conduct to increase the sentence in three separate ways." The PSR assessed a base offense level of 12, under U.S.S.G. § 2L1.1(a)(3). It then recommended a six-level enhancement, under § 2L1.1(b)(2)(B), for transporting between 25 and 99 unlawful aliens, based on findings that Jimenez-Elvirez transported 17 undocumented aliens on June 30, 2015 and an additional 27 undocumented aliens on October 7, 2015, for a total of 44 undocumented aliens. As previously discussed, it added another two offense levels, under § 2L1.1(b)(3)(A), because Jimenez-Elvirez committed the instant offenses after sustaining a prior felony immigration conviction. Finally, the PSR recommended a three-level increase, under § 3C1.3, because Jimenez-Elvirez committed the instant offenses while

18

on release pending sentencing for the June 30 illegal transport offense.[5] The district court adopted these recommendations without change.

As with the previous issue, Jimenez-Elvirez concedes that he did not object to the purportedly improper "triple counting" in the district court and thus our review is limited to plain error. *See Puckett*, 556 U.S. at 135. But even if he had, this issue would not be grounds for reversal because it raises no error, plain or otherwise.

It is well-established that "the Guidelines do not prohibit double counting except when the particular Guideline at issue expressly does so." *United States v. Luna*, 165 F.3d 316, 323 (5th Cir. 1999); *see also United States v. Hawkins*, 69 F.3d 11, 14 (5th Cir. 1995) ("The Sentencing Guidelines do not forbid all double counting. Double counting is prohibited only if the particular guidelines at issue specifically forbid it." (citations omitted)). Jimenez-Elvirez does not point to any provision of or commentary to § 2L1.1 or § 3C1.3 expressly prohibiting double or triple counting.[6]

The cases that Jimenez-Elvirez cites for support are not controlling because they deal with another Guideline not at issue here, § 3C1.2, concerning enhancements for reckless endangerment during flight, which expressly prohibits double counting "solely on the basis of the same conduct." § 3C1.2 cmt. n.1; *see United States v. Gillyard*, 261 F.3d 506, 510–12 (5th Cir. 2001) (analyzing whether Application Note 1 to § 3C1.2 prohibited two separate

---

[5] In recommending this three-level enhancement, the PSR incorrectly referred to Guideline § 3C1.2, which provides for a two-level increase for reckless endangerment during flight. This error, however, is immaterial, because both the PSR's description in support of the enhancement and the district court's colloquy at sentencing make clear that the enhancement was applied for Jimenez-Elvirez's violation of his supervised release.

[6] In any event, with respect to the six-level enhancement under § 2L1.1(b)(2)(B), because the instant crime involved transporting 27 illegal aliens, it would have warranted a six-level enhancement even without including the 17 illegal aliens from the June 30 offense, a fact the district court noted during sentencing.

enhancements and concluding it did not because the events at issue were temporally and spatially distinctive enough to not constitute the same conduct); *United States v. Cabral-Castillo*, 35 F.3d 182, 188–89 (5th Cir. 1994) (concluding that the district court plainly erred in ignoring Application Note 1 to § 3C1.2, but declining to exercise discretion to correct the error); *see also United States v. Hayes*, 135 F.3d 435, 437–38 (6th Cir. 1998) (vacating and remanding because district court erred by double counting "the same conduct" in contradiction to Application Note 1 to § 3C1.2).

Accordingly, this issue presents no cause for remand.

### E. Alleged Prosecutorial Misconduct During Closing Argument

Finally, Jimenez-Elvirez contends that the prosecutor's comments during closing argument impermissibly bolstered Martinez's credibility and thus violated his right to a fair trial. As with his last two assignments of error, Jimenez-Elvirez acknowledges that our review is limited to plain error due to his failure to object at trial. *See United States v. Aguilar*, 645 F.3d 319, 323 (5th Cir. 2011).

As a general rule, a prosecutor may not express a "personal opinion on the merits of the case or the credibility of witnesses" except to the extent the opinion is based on the evidence in the case. *United States v. Alaniz*, 726 F.3d 586, 616 (5th Cir. 2013) (internal quotations marks and citation omitted). A prosecutor may not vouch for the credibility of a witness in a way that "might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt." *United States v. McCann*, 613 F.3d 486, 495 (5th Cir. 2010). Nor may a prosecutor "offer personal assurances to the jury that government witnesses are telling the truth" or "tell the jury that law enforcement witnesses should be believed simply because they were doing their job." *United States v. Gracia*, 522 F.3d 597, 601 (5th Cir. 2008). We "evaluat[e] the remark in light of the

context in which it is made." *United States v. Valencia*, 600 F.3d 389, 409 (5th Cir. 2010).

Jimenez-Elvirez argues that the following statements were improper:

> Now, with respect to the testimony, there are instructions given to you in paragraph 1.08 [of the jury charge] of what to consider in determining a witness's credibility. The case would have been a lot easier if all the agents said exactly the same thing and if they all said, oh, it was an unmarked unit, oh, yes, I had my lights and siren, and it would make it a lot easier. But that's not what happened. So what inference can you draw from someone who says, I was in an unmarked unit, the flash—the bar was above the visor, the windshield, it is visible, the first time I didn't come up completely closely up to the person, the second time I came up almost all the way to the window? What does that suggest to you? Someone who's trying to exaggerate for the purpose of convincing you that, oh, he knew all the time? Or someone who's saying, this is what actually happened?

These comments do not improperly bolster Martinez's testimony. The challenged remarks do not reflect the prosecutor's personal opinion regarding the merits of the case or Martinez's credibility. *See Alaniz*, 726 F.3d at 616. The prosecutor neither offered his personal assurance that Martinez had testified truthfully nor suggested that he should be believed simply because he is a law enforcement officer. *See Gracia*, 522 F.3d at 601. Nor did he reasonably imply that he was convinced of Jimenez-Elvirez's guilt based on evidence that was not known to the jurors. *See McCann*, 613 F.3d at 495. Furthermore, the prosecutor's comments as to credibility did not "go beyond the evidence" presented at trial. *Aguilar*, 645 F.3d at 324. Rather, the prosecutor suggested to the jury that Martinez's testimony itself contains indicia of honesty—that the testimony's imperfection is suggestive of its truthfulness. Moreover, when viewed in the context of the Government's closing argument as a whole, the challenged commentary "was not dominant and does not cast doubt on the verdict." *United States v. Dunigan*, 555 F.3d

No. 16-40560

501, 509 (5th Cir. 2009). Therefore, Jimenez-Elvirez has not shown error, plain or otherwise, in the admission of the challenged remarks. *See id.* at 508–09; *Puckett*, 556 U.S. at 135.

## III.   CONCLUSION

For the foregoing reasons, Jimenez-Elvirez's convictions and sentences are in all respects AFFIRMED.

22