# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2024

Lyle W. Cayce
Clerk

———————

No. 23-40348

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Salvador Jaquez,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:22-CR-1192-2

_____

Before Southwick and Duncan, *Circuit Judges*, and Kernodle, *District Judge*.[*]

Leslie H. Southwick, *Circuit Judge*:

A jury convicted Salvador Jaquez of conspiracy to transport an undocumented alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I), and transporting or attempting to transport an undocumented alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). The district court imposed concurrent sentences of

---

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

No. 23-40348

36 months of imprisonment on each count, followed by three years of supervised release. On appeal, Jaquez challenges the sufficiency of the evidence on both counts. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

A superseding indictment charged Jaquez with one count of conspiracy to transport and one count of transporting undocumented aliens. Jaquez pled not guilty on both counts. The following evidence was presented at his trial before a jury.

The United States Border Patrol has two checkpoints near Laredo, Texas. A driver can avoid both checkpoints by driving through the OKM Ranch and the neighboring Briscoe Ranch.

Border Patrol Agent George Reyna testified that at 5:30 a.m. on August 30, 2022, a Border Patrol camera captured an image of a pickup truck with a gooseneck trailer on the road leading to the OKM Ranch. Agent Reyna alerted field agents, and Border Patrol Agent Joshua Cayton immediately responded. Based on recent alien smuggling activity, Agent Cayton believed the truck's likely exit point was the Briscoe Ranch main road. While en route to the main road, Agent Cayton received another camera notification at approximately 5:40 a.m., indicating a vehicle was entering the Briscoe Ranch from the OKM Ranch.

Agent Cayton approached the gate leading to the Briscoe Ranch main road with his lights out. After opening the gate, he parked out of sight and returned to the gate on foot. Soon, two other Border Patrol agents arrived. At approximately 6:00 a.m., Agent Cayton saw headlights and confirmed it was the truck from the camera images. Agent Cayton detained the driver while the other agents detained the front-seat passenger and Jaquez, who was sitting in the back seat. The truck driver and front-seat passenger were aliens in this country illegally. The agents discovered 60 more undocumented

aliens hidden in the gooseneck trailer.  Jaquez was the only United States citizen in the truck.

Agents searched the truck and found two grocery bags full of cell phones on the back seat.  They also found bolt cutters, a black bag containing a flashlight, and master locks with keys, which were used to secure the gates on the OKM and Briscoe Ranch roads.

Homeland Security Investigations promptly assumed control of the investigation.  At trial, Homeland Security Special Agent Michael Rhea testified about his video interview with Jaquez.  Jaquez said he was a United States citizen living in Nuevo Laredo, Mexico.  Jaquez asserted he was a day laborer who routinely crossed into Laredo for work and on August 30, 2022, he had prearranged a job moving hay.  Jaquez maintained the truck with the trailer picked him up at a plaza in Nuevo Laredo between 5:45 and 6:00 a.m. to take him to the day job.

During the interview, Jaquez later changed his story.  In his second version, Jaquez explained that, after being picked up by the truck with the trailer, he was taken to a house in south Laredo, where the driver was replaced.  Jaquez allegedly fell asleep after the truck proceeded along the ranch road until he was awakened by the Border Patrol agents.  Jaquez told Agent Rhea he was unaware of the people hidden in the trailer.

Agent Rhea testified that Jaquez, during the same interview, changed his story a third time.  In his third rendition, Jaquez told Agent Rhea the truck that picked him up at the Nuevo Laredo plaza was not the truck he was arrested in; he instead was picked up by a blue Ford F-150 truck with four occupants.  The F-150 proceeded to the house in south Laredo.  Two of the F-150's occupants got into the trailer and another took the driver's seat of the truck in which Jaquez was arrested.  The driver allegedly instructed

Jaquez to sit in the back and pay attention to the routes so that he could learn them.

According to Agent Rhea's testimony, Jaquez changed his story a fourth time during the interview. The Government played this portion of the video interview for the jury. In the video, Jaquez asserted he saw the last four aliens get into the trailer but admitted he did not ask any questions or walk away because he wanted to get paid. Jaquez confessed he knew the truck was heading north towards San Antonio and was attempting to evade the Border Patrol checkpoints.

During the interview, Agent Rhea searched Jaquez's cellphone with his consent. One contact in the cellphone was Tony Primo. The number and time of calls involving Primo stood out to Agent Rhea as consistent with that of similar alien smuggling cases. Agent Rhea also found WhatsApp audio messages between Jaquez and Edgar Descargas. "Descargas" means "unloading" in English. Agent Rhea testified he did not know the legal name of that person, but speculated Jaquez saved the contact as "Edgar Unloading," which indicated Descargas was connected to the smuggling operation. The messages were translated to English for trial.

On August 28, 2022, Jaquez asked Descargas through WhatsApp whether Descargas had a schedule "to load the box," "[b]ecause [Descargas] said that tomorrow there was going to be a box loaded." Descargas told Jaquez he would have the information the next day. Jaquez responded, "[he] need[ed] to be ready/sure so that [he] [could] also move the people."

On cross-examination, Agent Rhea acknowledged there was no other data related to alien smuggling in Jaquez's cellphone. Jaquez's criminal history consisted only of a juvenile arrest. To Agent Rhea's knowledge, Jaquez did not operate the truck, open any of the gates, or have a large sum of cash on him at the time of his arrest.

Agent Rhea further explained that, in reviewing the WhatsApp messages between Jaquez and Descargas, it appeared that Descargas was the one providing Jaquez with work. Descargas, however, contacted Jaquez again through WhatsApp about a job one week after Jaquez's arrest, while Jaquez was in custody. Agent Rhea admitted this contact did not make sense if Descargas was involved in the smuggling operation. After the Government rested, the district court denied Jaquez's motion for a judgment of acquittal.

The jury found Jaquez guilty on both counts. At sentencing, the district court adopted the presentence report and stayed within the United States Sentencing Guidelines by imposing 36-month concurrent sentences and three years of supervised release. Jaquez timely appealed.

## DISCUSSION

Jaquez moved for a judgment of acquittal based on insufficient evidence at the close of the Government's case. This court reviews his challenge to the sufficiency of the evidence *de novo* because it has been properly preserved for appeal. *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007).

"The jury's verdict is afforded great deference on appeal." *United States v. Zamora-Salazar*, 860 F.3d 826, 831 (5th Cir. 2017) (quotation marks and citation omitted). This court examines "the evidence in the light most favorable to the [G]overnment with all reasonable inferences and credibility choices made in support of the verdict." *United States v. Jones*, 133 F.3d 358, 362 (5th Cir. 1998) (citation omitted). "In determining whether the evidence was sufficient to support the conviction, the question is whether *any* rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." *Zamora-Salazar*, 860 F.3d at 831 (emphasis in original) (quotation marks and citations omitted). Because of the "highly deferential standard of review," this "court only ascertains whether the jury made a

rational decision, not whether the jury correctly determined guilt or innocence." *Id.* at 831–32 (quotation marks and citations omitted).

On appeal, Jaquez argues there was insufficient evidence to convict him on both counts: conspiracy to transport undocumented aliens and transporting undocumented aliens. We address each count separately.

## I.　　*Conspiracy to transport undocumented aliens*

To convict Jaquez of conspiracy to transport undocumented aliens, the Government must demonstrate Jaquez knowingly, intentionally, and voluntarily "(1) agreed with one or more persons (2) to transport an undocumented alien inside the United States (3) in furtherance of his unlawful presence (4) knowingly or in reckless disregard of the fact that the alien's presence in the United States was unlawful." *United States v. Jimenez-Elvirez*, 862 F.3d 527, 533–34 (5th Cir. 2017). "The elements of conspiracy may be established solely by circumstantial evidence, including the presence, association, and concerted action of the defendant with others." *Id.* at 534 (quotation marks and citation omitted).

Jaquez challenges only the first element — whether there was sufficient evidence of an agreement. Jaquez argues there is no evidence he agreed to transport aliens with another person. He acknowledges the evidence of the driver's instruction for him to get in the back seat of the truck and pay attention to the routes so he could learn them. Jaquez contends, however, he never agreed to the driver's instruction or to driving in the future and, thus, no conspiracy existed.

Jaquez does not account for the additional evidence against him, such as his differing versions of events and messages with Descargas regarding loading "boxes" and moving people. Jaquez confessed that he knew about the aliens in the trailer and that the driver was attempting to evade the Border

Patrol checkpoints.  Further, a Border Patrol agent found Jaquez in the back seat of the truck with various incriminating items.

This circumstantial evidence, taken together, sufficiently supports a finding that Jaquez entered into an agreement to transport aliens.  We thus conclude a rational juror could have determined the Government sufficiently demonstrated beyond a reasonable doubt that Jaquez knowingly, intentionally, and voluntarily participated in a conspiracy to transport undocumented aliens.

## II.     *Transporting undocumented aliens*

To convict Jaquez for transporting undocumented aliens, the Government had to prove:

> (1) an alien entered or remained in the United States in violation of the law, (2) [Jaquez] transported the alien within the United States with intent to further the alien's unlawful presence, and (3) [Jaquez] knew or recklessly disregarded the fact that the alien was in the country in violation of the law.

*United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002).  Jaquez challenges only the second element.

Jaquez argues that because he was not a driver and there was no evidence demonstrating he exercised any measure of control over the smuggling operation or the aliens, he could not be convicted for a transporting offense.  He acknowledges that a panel of this court held that a passenger can properly be convicted of transporting undocumented aliens. *United States v. Acosta-Ruiz*, 481 F. App'x 213, 216–17 (5th Cir. 2012).  He argues his case is distinguishable because *Acosta-Ruiz* was decided under a different standard of review, namely, the manifest-miscarriage-of-justice standard. *Id.* at 216.

In *Acosta-Ruiz*, a panel of this court concluded that, although most transporting convictions involve a defendant who is the driver, "[8 U.S.C. § 1324(a)] is obviously broader than this common fact pattern." *Id.* Further, "our cases reflect that the [transporting] element turns on the defendant's control of the means of transportation," not his status as a driver. *Id.* The applicable standard of review did not affect this reasoning. We adopt the reasoning of *Acosta-Ruiz* and conclude that on the proper facts, a passenger may be convicted of transporting undocumented aliens.

The evidence here sufficiently supports the jury's finding that Jaquez exercised control over the means of transportation. Jaquez's conversation with Descargas indicated he was coordinating the transport and needed to obtain additional people to help complete the job for Descargas. Jaquez was found with the locks and keys for the ranch road gates as well as the aliens' cell phones, supporting some control or supervision of the operation. Further, Jaquez, in his interview with Agent Rhea, demonstrated his knowledge of the operation details. The jury, examining the evidence cumulatively, could properly infer beyond a reasonable doubt that Jaquez satisfied the transporting element and had some control over the operation.

AFFIRMED.