# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 14, 2026

Lyle W. Cayce
Clerk

No. 25-50395
Summary Calendar

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Rosezzettea Lee Lopez,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:24-CR-248-1

_____

Before Jones, Duncan, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Rosezzettea Lee Lopez challenges the sufficiency of the evidence supporting her convictions for conspiracy to transport undocumented individuals, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and (B)(i), and transportation of undocumented individuals for the purpose of commercial advantage or private financial gain, in violation of 8 U.S.C.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-50395

§ 1324(a)(1)(A)(ii) and (B)(i). She also raises several constitutional claims for the first time on appeal. We AFFIRM.

I

On January 12, 2024, Lopez drove her pickup truck to a United States Border Patrol checkpoint near Eagle Pass, Texas. Her boyfriend, Edward Flores, and four other individuals were also in the vehicle. After detecting the odor of marijuana, agents directed the vehicle to a secondary inspection area. An immigration check revealed that Lopez and Flores were United States citizens, but that the four other occupants were unlawfully in the United States without documentation. All were arrested and transported to a border patrol station. Lopez waived her *Miranda*[1] rights, agreed to speak with law enforcement, and consented to a search of her cellphone.

Agents conducted three recorded interviews with Lopez. She explained that she had lost her job in December 2023 and applied for a driver position posted online by an individual she knew as "Josh Drivers." Josh described the job as picking up and transporting people to different locations. Lopez began picking up people in the Houston area, and Josh later told her additional jobs were available involving people from El Salvador and Venezuela. She received "pings" showing pickup locations, and Josh paid her in cash or through her WhatsApp account.

As for the four individuals found at the checkpoint, Lopez initially stated that after an original passenger did not appear, Flores encountered the group at a casino, and they requested a ride to Austin. She denied knowing they were undocumented and stated no monetary arrangements were made. In her final interview, however, Lopez abandoned the casino story and stated

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966)

she received a "ping" to pick up the group. When asked who coordinated "this smuggling event," she claimed it was organized "through Josh." She also stated she expected to receive $500 for the original solo passenger.

Lopez's cellphone also contained extensive communications with Josh and another individual, "Randy," spanning from December 11, 2023, through January 12, 2024. When Lopez first inquired about the position, Josh told her it was an "under the table type of thing" involving driving individuals who had "just crossed the border and just need a ride past the cops," with pay of "1K per person." Lopez responded that she was "interested" and understood "what the job [was] requesting." Later messages showed Lopez coordinating dates, times, and locations for transporting individuals on multiple occasions. The messages also discussed whether the checkpoint was open or closed, with Josh noting that "this job gets a little bit more complicated when its open." Lopez transported individuals or groups at least six times between December 14, 2023, and January 11, 2024.

On January 11th, the day before the charged offense, messages showed Lopez traveled to Eagle Pass with Flores, received location coordinates from Randy, and picked up and dropped off an individual. The next day, Lopez and Randy exchanged voice calls and messages, including directions. Lopez shared her location with Randy shortly before arriving at the checkpoint.

A grand jury returned a two count indictment charging Lopez with conspiracy to transport undocumented individuals, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and (B)(i), and transportation of undocumented individuals for the purpose of commercial advantage or private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (B)(i). At the close of the Government's case, Lopez moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which the district court denied. Lopez then

rested without putting forward any evidence in her defense. The jury found her guilty on both counts and further found that her commission of the transportation offense was for the purpose of commercial advantage and private financial gain. Lopez timely appealed.

## II

Lopez argues that the evidence presented at her trial was insufficient to support either conviction. Additionally, she argues that her prosecution chilled her First Amendment right of freedom of association, that her consent for law enforcement to search her cellphone was involuntarily given, in violation of the Fourth Amendment, and that her prosecution violated her constitutional right to interstate travel. We address each claim in turn.

## A

We review Lopez's preserved sufficiency challenges de novo, asking "whether a reasonable jury could have properly concluded, weighing the evidence in a light most deferential to the verdict rendered by the jury, that all of the elements of the crime charged had been proven beyond a reasonable doubt." *United States v. Shaughnessy*, 157 F.4th 378, 385 (5th Cir. 2025) (quoting *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007)).

To convict Lopez of conspiracy to transport undocumented individuals under § 1324(a)(1)(A)(v)(I), the Government was required to prove that she "(1) agreed with one or more persons (2) to transport an undocumented alien inside the United States (3) in furtherance of his unlawful presence (4) knowingly or in reckless disregard of the fact that the alien's presence in the United States was unlawful." *United States v. Jimenez-Elvirez*, 862 F.3d 527, 533–34 (5th Cir. 2017) (citing *United States v. Chon*, 713 F.3d 812, 818 (5th Cir. 2013)). The agreement need not be explicit or formal; a tacit agreement suffices. *Chon*, 713 F.3d at 818. And the elements of conspiracy "may be established solely by circumstantial evidence,

including the presence, association, and concerted action of the defendant with others." *Jimenez-Elvirez*, 862 F.3d at 534 (citations and internal quotations omitted).

We conclude the evidence on the conspiracy count was sufficient. Lopez's cellphone messages established that she was aware of the nature of the enterprise from the outset. Josh told her the job was an "under the table type of thing" involving people who had "just crossed the border and just need a ride past the cops," paying "1K per person." Lopez confirmed she understood and, over the following month, repeatedly initiated and accepted transportation jobs, coordinated pickup and drop-off locations and times, discussed checkpoint status, and received instructions on evading detection. She transported individuals or groups at least six times between December 2023 and January 2024. And on January 12th, Lopez was in contact with Randy and shared her location shortly before arriving at the Eagle Pass checkpoint. These communications reflect a sustained, knowing agreement to transport undocumented individuals in furtherance of their unlawful presence.

Lopez's inconsistent statements to law enforcement further support the verdict. She initially claimed Flores encountered a group at a casino who requested a ride. She later abandoned that account and admitted she received a "ping" to pick up the group, and that the "smuggling event" was coordinated "through Josh." A jury may reasonably infer guilty knowledge from such inconsistent and implausible explanations. *See United States v. Cano-Guel*, 167 F.3d 900, 904–05 (5th Cir. 1999). In sum, viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that Lopez conspired with one or more persons to transport undocumented individuals into the United States.

We likewise conclude that the evidence was sufficient to prove Lopez transported undocumented individuals within the United States for commercial advantage or private financial gain under § 1324(a)(1)(B)(i).[2] To establish the financial-gain element, the Government must prove Lopez sought "to profit or otherwise secure some economic benefit from [the] smuggling endeavor." *Ruiz-Hernandez*, 890 F.3d at 210 (quoting *United States v. Garcia*, 883 F.3d 570, 574 (5th Cir. 2018)). The statute "does not require proof of *actual* payment, only evidence that the smuggling activity was undertaken for the *purpose* of financial gain." *Id.* "[A] jury is free to infer such a purpose from circumstantial evidence, including evidence that the defendant did not previously know the individuals being smuggled, and evidence that others in the same smuggling operation had received or would receive money." *Id.* (internal citations omitted).

Ample circumstantial evidence supports the jury's verdict. From the outset, Lopez's participation in the enterprise was financially motivated. She told agents she had lost her job and was trying to earn money. Josh's initial job posting promised "1K per person." Her messages referred to specific payment amounts, including up to $2,200 for certain jobs. Lopez admitted that she had earned three to four thousand dollars. And she stated she expected to receive $500 for the original passenger she was to pick up on the

---

[2] A conviction under 8 U.S.C. § 1324(a)(1)(A)(ii) requires proof that "(1) the defendant transported or attempted to transport an alien within the United States, (2) the alien was in the United States illegally, (3) the defendant knew of or recklessly disregarded the fact that the alien was in the United States illegally, and (4) the defendant acted willfully in furtherance of the alien's violation of the law." *United States v. Carmona-Ramos*, 638 F. App'x 351, 355 (5th Cir. 2016). Section 1324(a)(1)(B)(i) increases the maximum penalty from five to ten years of imprisonment if the offense was committed for the purpose of commercial advantage or private financial gain. *United States v. Ruiz-Hernandez*, 890 F.3d 202, 210 (5th Cir. 2018). Lopez challenges only the financial-gain enhancement; she does not contest the sufficiency of the evidence supporting the four elements of the underlying transportation offense.

date of the charged offense. Her conduct on January 11th and 12th followed the same pattern as her prior paid transports.

That the record does not establish the precise dollar amount Lopez anticipated for the January 12th trip does not render the evidence insufficient. The financial-purpose element is prospective and intent-based. *Garcia*, 883 F.3d at 575. A rational jury could have found beyond a reasonable doubt that Lopez expected to be paid for transporting the four undocumented individuals on January 12th, just as she had been paid on prior occasions. *See Ruiz-Hernandez*, 890 F.3d at 210.

## B

Lopez also raises several constitutional claims for the first time on appeal: that her prosecution violated her right to interstate travel, that her consent to the cellphone search was involuntary under the Fourth Amendment, and that the Government's theory of liability chills First Amendment associational rights. Because she did not raise these claims below, our review is limited to plain error. *Shaughnessy*, 157 F.4th at 387 (citing *United States v. Cervantes*, 706 F.3d 603, 616 (5th Cir. 2013)).

None of Lopez's constitutional claims demonstrate plain error. As to the right to interstate travel, Lopez cites no precedent holding that a prosecution under § 1324 violates a defendant's right to interstate travel, nor does she show error in the straightforward application of existing cases. *United States v. Jones*, 88 F.4th 571, 574 (5th Cir. 2023). And, as discussed above, the evidence established far more than Lopez's mere presence on a highway. As to the Fourth Amendment, Lopez signed a written consent form, and the mere presence of armed officers does not necessarily render a situation coercive. *United States v. Martinez*, 410 F. App'x 759, 764 (5th Cir. 2011). Indeed, Lopez concedes that this argument "is likely foreclosed in the Fifth Circuit." As to the First Amendment, the contention that § 1324

No. 25-50395

prosecutions chill associational rights is speculative, and Lopez offers no supporting precedent.

## III

The judgment of the district court is AFFIRMED.